## The UNITED STATES of America

v.

## Joseph GULLO, Jr. and David Lipari.

### No. CR–87–54E.

United States District Court, W.D. New York.

Aug. 14, 1987.

---

Joseph M. Guerra, III, Asst. U.S. Atty., Buffalo, N.Y., for plaintiff.

Paul Cambria, Buffalo, N.Y., for defendants.

MEMORANDUM AND ORDER

ELFVIN, District Judge.

The abovenamed individuals ("the defendants") have been charged in a one-count Indictment with participating in the use of extortionate means to collect, or attempt to collect, an extension of credit in violation of 18 U.S.C. §§ 874 and 2. The defendants have submitted wideranging pretrial motions.

Gullo has moved for dismissal of the Indictment, to suppress certain evidence, for disclosure of matters occurring before the grand jury, to compel disclosure of "*Brady* material", to compel disclosure of so-called "bad act evidence," for disclosure of the government's intention to use any evidence he might be entitled to discover under Fed.R.Cr.P. rule 16 and to compel law enforcement officials to preserve any and all notes, memoranda, resumes and synopses. Lipari has also moved, albeit on other grounds, to dismiss the Indictment. He also seeks severance pursuant to Fed.R. Cr.P. rules 8 and 14, disclosure of *Brady* material and disclosure of and a determina-

tion as to admissibility of any co-conspirator statements.

Gullo's motion to dismiss the Indictment arises out of his participation, as a party, in an arbitration hearing. In January 1986 he received from the Community Dispute Resolution Settlement Center ("the CDR Center") a notice indicating that a complaint or grievance had been lodged against him. The subject matter of the complaint was directly related to the events leading to the present Indictment. The complaint or grievance form identified the grievant, the nature of the dispute and the settlement sought, noted that the grievance had been referred to the CDR Center by the Jamestown (N.Y.) Police Department and described the CDR Center as

"a project of the Better Business Bureau Foundation of Western New York, Inc. under contract with the Better Business Bureau of Western New York, Inc., the Unified Courts System of the State of New York and County Youth Services and grants from the Erie County Legislature, and the City of Buffalo." Exhibit C to Memorandum in Support of Motion to Suppress attached to Gullo's Notice of Motion dated May 8, 1987.

The grievance form further states that

"BY SIGNING THE AGREEMENT, YOU ARE INDICATING YOUR WILLINGNESS TO TRY AND RESOLVE YOUR DISPUTE WITHOUT COURT ACTION. THIS FORM DOES NOT BIND YOU TO THE PROCESS OR GUARANTEE YOUR CASE WILL BE RESOLVED. THE CDR CENTER WILL CONTACT YOU ABOUT ARBITRATION IN THE MATTER." *Ibid.*

Gullo apparently executed the document and a second document, executed January 20, 1986, entitled "Agreement to Arbitrate." The latter document generally restates the nature of the dispute and the nature of the settlement sought. It advises that agreement to arbitrate would result in an attempt by a neutral to reach settlement through mediation and, if mediation failed, in binding arbitration. *Id.* at Exhibit B. It further states that the party

agreeing to such dispute resolution understood that

"the neutral [assigned to the case] will hold all information received during the hearing as confidential and will not voluntarily divulge that information. [The Parties] agree that the neutral will not be subpoenaed by either party in any subsequent legal proceeding." *Ibid.*

This provision as to confidentiality and the agreement not to subpoena the neutral was reiterated in a document entitled "Stipulation of Issues" executed by the arbitrating parties January 30, 1986.

During the course of the dispute resolution process Gullo made certain statements. He now claims that those statements were involuntarily made in violation of his rights under the Fifth and Fourteenth Amendments and that the statements should not have been presented to the Grand Jury. He argues that the Indictment should be dismissed for these reasons or, in the alternative, that the statements made and the arbitration result should be suppressed.

The CDR Center operates pursuant to the Community Dispute Resolution Centers Program established July 27, 1981 by sections 849–a to 849–g of New York's Judiciary Law. The statute states in part that there existed a

"compelling need for the creation of dispute resolution centers as alternatives to structured judicial settings. Community dispute resolution centers can meet the needs of their community by providing forums in which persons can participate in the resolution of disputes in an informal atmosphere without restraint and intimidation. * * * Community dispute resolution centers can serve the interests of the citizenry and promote quick and voluntary resolution of certain criminal matters."

The program is to be administered and supervised under the direction of the chief administrator of the courts. It provides funds for the establishment and continuance of dispute resolution centers. Grant recipients are defined as non-profit organizations organized for the resolution of disputes or for religious, charitable or edu-

cational purposes. To be eligible for funding, the Act provides that the neutral mediators have certain qualifications, that only certain costs be assessable to participants, that agreements or decisions be written, that monetary awards, which may not in any case exceed a certain amount, may be assessed only upon consent of the parties and that the dispute resolution center may not hear certain types of disputes of a more serious criminal nature. The centers are selected by the chief administrator of the courts from submitted applications. The state's share of any center's costs may not exceed fifty percent. The statute also imposes certain reporting requirements upon grant recipients. Importantly, the Act creates a privilege of confidentiality for the mediation of arbitration proceedings and decisions. Section 849–b, subdiv. 6.[1]

The Fifth and Fourteenth Amendments are implicated, however, only if the arbitration process is found to be government action. *Colorado v. Connelly*, — U.S. —, 107 S.Ct. 515, 520, 521, 93 L.Ed.2d 473 (1986). "The most outrageous behavior by a private party seeking to secure evidence against a defendant does not make that evidence inadmissible under the Due Process Clause." *Id.* 107 S.Ct. at 521. Here, if the mediation/arbitration proceeding out of which Gullo's statements emanate had been private and not state action, the Fifth and Fourteenth Amendments would not serve as vehicles to dismiss the Indictment or to suppress statements made.

▬ The CDR Center is a private organization staffed by its own personnel. It is under contract to New York to provide certain services and has agreed to abide by the applicable statutory and regulatory re-

quirements. In the present case, the issue for arbitration had assertedly been referred by the Police Department. Charges had not been brought against Gullo and this Court does not know whether such would have been brought absent Gullo's agreement to arbitrate.[2] This Court finds, however, that the CDR Center's contract with New York, its receipt of funding from that state and its resolution of the conflict between Gullo and the complainant fail to establish it as a state actor.

This Court does not find that Gullo's statements had been made involuntarily. Importantly, any compunction or coercion had been promoted by a non-government source. *See United States v. Solomon*, 509 F.2d 863, 871–872 (2d Cir.1975). Here, as in that case, there was no certainty as to what penalty, if any, Gullo would have received had he declined to speak. Unlike that case, it is not clear that Gullo's decision to speak had been made after consultation with counsel. Nevertheless, finding involuntariness here is unwarranted.[3] The obtainment and use of Gullo's statements is not found to have violated his constitutional rights.

▬ Gullo also asserts that the privilege established by subdivision 849–b.6 applies and, therefore, the Indictment should be dismissed because confidential material had been divulged to the Grand Jury or, alternatively, that all information obtained from and arising out of the arbitration proceeding should be suppressed. Federal Rules of Evidence rule 501 leaves privileges to statutory and common law development "in the light of reason and experience." To determine whether to recognize specific privileges that are not "firmly em-

1. That subdivision provides:
"Except as otherwise expressly provided in this article, all memoranda, work products, or case files of a mediator are confidential and not subject to disclosure in any judicial or administrative proceeding. Any communication relating to the subject matter of the resolution made during the resolution process by any participant, mediator, or any other person present at the dispute resolution shall be a confidential communication."

2. Nothing has been presented to this Court suggesting that the conflict had been referred to the CDR Center pursuant to sections 170.55 and 215.10 of New York's Criminal Procedure Law.

3. Gullo also claims that his statements should be suppressed because they occurred during plea negotiations. However, absent some charge or negotiation with government officials, no plea negotiation is found to have occurred.

bedded in federal law" requires balancing four factors:

"first, the federal government's need for the information being sought in enforcing its substantive and procedural policies; second, the importance of the relationship or policy sought to be furthered by the state rule of privilege and the probability that the privilege will advance that relationship or policy; third, in the particular case, the special need for the information sought to be protected; and fourth, in the particular case, the adverse impact on the local policy that would result from non-recognition of the privilege." *United States v. King,* 73 F.R.D. 103, 105 (E.D.N.Y.1976).

As to the first factor, there is a strong policy in favor of full development of facts and admissibility in criminal cases. *United States v. Chiarella,* 588 F.2d 1358, 1372 (2d Cir.1978); *United States v. King, supra,* at 106. As the United States Supreme Court has stated "[t]he need to develop all relevant facts in the adversary system is both fundamental and comprehensive." *United States v. Nixon,* 418 U.S. 683, 709, 94 S.Ct. 3090, 3108, 41 L.Ed.2d 1039 (1974). Suppression here would impinge on such policy.

Secondly, the policy sought to be furthered by the state promulgated privilege is the encouragement of participation in "the resolution of disputes in an informal atmosphere without restraint and intimidation." The confidentiality outlined under subdivision 849–b.6 is core to establishing an atmosphere "without restraint and intimidation." Although it is unclear whether the privilege acts in any primary sense to encourage participation in the program, it directly serves to insure the effectiveness of the program and thereby, secondarily, it serves to promote continued support for and existence of the program. It should be noted that abrogation of the privilege would place funding for the program in jeopardy. Subdivision 849–b.4; *People v. Snyder,* 129 Misc.2d 137, 492 N.Y.S.2d 890, 892 (S.Ct., Erie Co. 1985).

With respect to the third factor, the United States has not shown any particularized need for the evidence. In fact, it concedes that, even without the evidence in dispute, the Grand Jury had more than enough evidence upon which to base its finding of probable cause. Government's June 8, 1987 Response to Defendant's Motion dated June 4, 1987, p. 3.

The final factor for consideration concerns the impact on local policy from not recognizing the privilege in this case. The privilege generally serves to foster participation in the program and serves to promote candor by those participating. Although, this Court grants that few potential parties will likely forego participation in the program because of knowledge that evidence adduced therein would be subject to presentation in a federal prosecution, the effectiveness of the program will nonetheless be reduced by compelled disclosure and its very funding will be called into question.

In balance, this Court finds that the privilege afforded by subdivision 849–b.6 must be recognized in proceedings before this Court. All statements made during the dispute resolution process and all terms and conditions of such settlement shall be suppressed.

■ The revelation of privileged matters to the Grand Jury does not lead inexorably to the conclusion that the defendants have been wrongfully prejudiced or that the Grand Jury's function has been impaired to a degree calling for the very serious step of dismissing the Indictment. *See United States v. Bein,* 728 F.2d 107, 113 (2d Cir. 1984); *United States v. Rogers,* 751 F.2d 1074, 1077 (9th Cir.1985); *United States v. Broward,* 594 F.2d 345 (2d Cir.), *cert. denied,* 442 U.S. 941, 99 S.Ct. 2882, 61 L.Ed.2d 310 (1979); *United States v. Mackey,* 405 F.Supp. 854, 860–863 (E.D.N.Y. 1975). The preferable remedy—that chosen in this instance—is to exclude such evidence at trial. *See United States v. Bein, supra,* at 113.

■ Gullo also seeks disclosure of matters occurring before the Grand Jury. However, the Indictment is valid on its face and the government's having presented evi-

dence now found to be incompetent to the investigating body is not found to constitute grounds either to dismiss the Indictment or to order disclosure of the minutes of its proceedings. *United States v. Weinstein,* 511 F.2d 622, 627 (2d Cir.1975).

■ Gullo has also sought certain *Brady* material. The government has responded by providing certain material and by indicating that certain other material, if it exists, will be disclosed at a later time. This Court finds no cause to set a specific date or time period by which *Brady* material must be disclosed. Rather, it is the prosecution's responsibility to divulge such information in ample time for the defendant's use of it in *preparation* for trial.

Gullo also moves to have this Court remind the prosecution of its continuing duty to disclose rule 16 material. The prosecution, in response, notes that it is well aware of its responsibility. No need is found to further remind the parties of their statutory duties.

■ Further, Gullo has moved, pursuant to rules 12(d)(1) and (2) to require the prosecution to give notice of its intention to use specified evidence at trial and to require the prosecution to notify him of its intention to use at trial any evidence which he may be entitled to discover under rule 16. The government responds by stating that Gullo may assume that all items provided by it pursuant to rule 16 will be used by the government at trial. One of the purposes of rule 12(d) is to obviate the need for defendants to make motions against evidence which will not be introduced at trial. Here, although the government has not narrowed the scope of evidence it intends to use at trial and, if its intentions are to only introduce some of the evidence discoverable under rule 16, may have breached the spirit of rule 12(d), the government's answer to Gullo's motion is responsive. No order is found to be necessary at this juncture.

■ Finally, Gullo has requested this Court to order the government agents to retain rough, handwritten notes, resumes, synopses, etc. taken during the course of investigation. The government has responded that the agents are currently under an administrative responsibility to do so. Nevertheless, the defendant's motion is granted.

■ Lipari has moved to dismiss the Indictment on the basis that its factual allegations fail to conform adequately to the requirements of Fed.R.Cr.P. rule 7(c)(1). This Court has reviewed the Indictment and considers that it meets the requirements of rule 7 in that it is sufficiently detailed to permit the defendants to prepare their defenses and to permit them to "plead acquittal or conviction in bar of future prosecution for the same offense." *United States v. Trotta,* 525 F.2d 1096, 1098 (2d Cir.1975), *cert. denied,* 425 U.S. 971, 96 S.Ct. 2167, 48 L.Ed.2d 794 (1976).

■ Lipari also seeks a dismissal due to irregularity in the Grand Jury's proceedings. No specific irregularity is cited but he seeks specific information concerning the proceedings. Because no specific grounds to dismiss have been put forward the motion to dismiss will be denied without prejudice. In essence, however, Lipari's request is simply for information. The government has responded in some fashion to each request. No cause is found to question here the adequacy of such government response.

■ Lipari has moved to sever under rules 8 and 14. Rule 8(b) permits the joinder of two or more defendants in the same indictment "if they are alleged to have participated in the same act or transaction or in the same series of acts or transactions constituting an offense or offenses." As was held in *United States v. Bledsoe,* 674 F.2d 647, 656 (8th Cir.), *cert. denied sub nom. Phillips v. United States,* 459 U.S. 1040, 103 S.Ct. 456, 74 L.Ed.2d 608 (1982):

"Rule 8(b) requires that there be some common activity involving all of the defendants which embraces all of the charged offenses even though every defendant need not have participated in or be charged with each offense. *See United States v. Ford,* 632 F.2d 1354, 1372–73 (9th Cir.1980), *cert. denied,* 450 U.S. 934,

101 S.Ct. 1399, 67 L.Ed.2d 369 (1981). In order to be part of the 'same series of acts or transactions,' acts must be part of one overall scheme about which all joined defendants knew or in which they all participated. *United States v. McKuin,* 434 F.2d 391, 395–96 (8th Cir. 1970), *cert. denied,* 401 U.S. 911, 91 S.Ct. 875, 27 L.Ed.2d 810 (1971)."

In this case the charges in a single-count indictment clearly represent a single transaction in which both defendants are claimed to have participated and of which they are claimed to have had knowledge. No basis for severance pursuant to rule 8 is found.

■■■■ The decision whether to grant or deny severance pursuant to rule 14 is within the broad discretion of the trial court. *United States v. Weisman,* 624 F.2d 1118 (2d Cir.), *cert. denied,* 449 U.S. 871, 101 S.Ct. 209, 66 L.Ed.2d 91 (1980). Ordinarily, persons who have been jointly indicted should be jointly tried. *United States v. Ramirez,* 710 F.2d 535 (9th Cir. 1983). A defendant seeking severance on the ground that he will be prejudiced by a joint trial bears

> "a 'heavy burden' of showing that he will suffer 'substantial prejudice' from a joint trial. Substantial prejudice does not mean merely a better [worse?] chance of acquittal. The prejudice must be of such a degree that the defendant's rights cannot be 'adequately protected by appropriate admonitory instructions to the jury' and such that, without a severance, he would 'not receive a fair trial.' Absent such a showing the defendant's request for a separate trial must give way to the public interest in avoiding unnecessary duplicative efforts, trial time and expense." *United States v. Potamitis,* 564 F.Supp. 1484, 1486 (S.D.N.Y.1983), *aff'd,* 739 F.2d 784 (2d Cir.), *cert. denied sub nom. Argitakos v. United States,* 469 U.S. 918, 105 S.Ct. 297, 83 L.Ed.2d 232 (1984).

Lipari claims that "Gullo, if tried separately from defendnat [sic] LIPARI, would, upon information and belief, state that defendant LIPARI was in no way involved in the alleged extension of credit nor in the use of threats or violence allegedly used to collect the extension of credit." Affidavit of Herbert L. Greenman, Esq. (sworn to May 18, 1987) attached to Notice of Motion dated May 18, 1987, ¶ 19. It is later stated by Lipari's attorney that Gullo "will unequivocally state that defendant Lipari had no part in the alleged crime." *Id.* at ¶ 21. It is further averred that Lipari has been informed that Gullo will not testify if the defendants are tried together. Further, it is alleged that a joint trial will preclude Lipari from cross-examining Gullo as to statements Gullo made before the CDR Center. Here, the recitation that, upon information and belief, Gullo would testify at a separate trial, and, presumably thus waive his Fifth Amendment privilege, fails to establish that Gullo would in fact testify at a separate trial. *See United States v. Finkelstein,* 526 F.2d 517, 523–525 (2d Cir. 1975), *cert. denied sub nom. Scardino v. United States,* 425 U.S. 960, 96 S.Ct. 1742, 48 L.Ed.2d 205 (1976). The parties have not addressed whether Gullo's testimony would be cumulative and whether it would be subject to substantial, damaging impeachment. *Id.* at 524. Clearly, judicial economy would be served by a joint trial. Given the arguments asserted, this Court finds that Lipari has not established that a joint trial would substantially prejudice him. Severance will not be granted.

Lipari also seeks to have the government disclose whether it, pursuant to Fed.R. Evid. rule 404, intends to utilize witnesses or evidence to establish other "bad acts" or "similar course of conduct" and, if so, the identification of the witnesses and the evidence. The government has responded by providing certain information requested. Given the government's disclosure, no order is found to be presently necessary.

■■■ Lipari seeks pretrial disclosure of statements made by his co-defendant and a hearing to determine the admissibility of any such statements against him. However, this Court finds it best to determine the admissibility and attribution of any such evidence at trial.

The government, noting that the two defendants are represented by attorneys

from the same law firm has moved for a hearing to determine any conflict of interest. The defendants' attorneys assert that they are of the opinion that no conflict exists but they do not oppose inquiring into the matter. A hearing will be ordered.

Accordingly, it is hereby ORDERED (1) that Gullo's motion to dismiss the Indictment is denied, (2) that all communications, memoranda and work products arising out of the action before the CDR Center are suppressed as provided in New York's Judiciary Law, (3) that Gullo's motion for disclosure of grand jury matters is denied, (4) that Gullo's motion for disclosure of *Brady* material is denied without prejudice, (5) that Gullo's motion for discovery is denied without prejudice, (6) that the government's agents are to preserve any and all notes, memoranda, resumes, synopses and the like associated with this action, (7) that Lipari's motion to dismiss the Indictment is denied, (8) that Lipari's motion to sever is denied, (9) that Lipari's motion to compel disclosure of so-called "bad-act evidence" is denied without prejudice, (10) that Lipari's motion for disclosure of co-conspirator statements, if any, and for a determination of their admissibility *vel non* is denied and (11) that the government's motion for a hearing to determine conflict of interest *vel non* is granted. The parties shall appear at 2:00 p.m. August 24, 1987 to set a date for such hearing.