Andrew L. SMITH, Plaintiff,

v.

Clayton J. SMITH, Mark L. Smith, Smith Protective Services, Inc., Smith Fire Equipment, Inc., and Marcla, Inc., Defendants.

Civ. A. No. 3:92–CV–0170–D.

United States District Court,
N.D. Texas,
Dallas Division.

May 10, 1994.

---

662

F. Dean Armstrong, Flossmoor, IL, for plaintiff.

Coyt Randal Johnston and Robert Tobey of Johnston & Budner, Dallas, TX, for defendants Smith Protective Servs., Inc. and Smith Fire Equipment, Inc.

Richard E. Young, Dallas, TX, for defendants Clayton J. Smith, Mark L. Smith, and Marcla, Inc.

Lawrence J. Friedman and Stephen D. Johnson of Friedman & Assocs., P.C., Dallas, TX, for Mediator Tom James.

D. Grant Seabolt, Jr., Jay Madrid of Winstead, Sechrest & Minick, P.C., Charles Guittard of Guittard, Hyden & Guittard, P.C., Bob Bliss, and Sid Stahl, Dallas, TX, for the Ass'n of Attorney–Mediators, Inc., as amicus curiae urging affirmance.

FITZWATER, District Judge:

This is an appeal from an order of the magistrate judge quashing a trial subpoena *duces tecum* served on a mediator appointed by a state court. The parties who issued the subpoena contend the mediator's testimony is necessary to refute plaintiff's claims in the present suit that relate to the settlement of state court lawsuits that the witness mediated. Without approving the magistrate judge's recognition of a mediator privilege, the court discerns no basis to disturb the order and therefore affirms.

**I**

Plaintiff Andrew L. Smith ("Andrew") brings this action against defendants Clayton J. Smith ("Clayton"), Mark L. Smith ("Mark"), Smith Protective Services, Inc. ("SPS"), Smith Fire Equipment, Inc. ("SFE"), and Marcla, Inc. ("Marcla"). In the words of the Fifth Circuit, it "is but another chapter in a protracted internecine feud among [the Smiths]." *Smith v. Ayres,* 977 F.2d 946, 947 (5th Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 2342, 124 L.Ed.2d 252 (1993). Andrew alleges that his two brothers, Clayton and Mark, with the assistance of SPS' lawyer, R. Jack Ayres, Jr., Esq. ("Ayres"), colluded to seize control of SPS by rescinding a sale of SPS stock from Clayton to SPS. Andrew sued his brothers in state court, challenging their control rights in SPS,

and contending he and his mother, Coralie C. Smith, were the controlling shareholders. Andrew filed a separate state court suit, seeking lost salary and other damages caused by the allegedly wrongful issuance of SPS stock to Clayton. Plaintiff also filed a derivative securities fraud action in federal district court against Ayres, the SPS attorney, alleging that Ayres was liable for his role in procuring the issuance of SPS stock to Mark and Clayton and for the two brothers' subsequent mismanagement of SPS.[1]

With the assistance of a mediator appointed by the state district court, Andrew, his mother, and brothers settled the state court suits and executed a settlement agreement that purported to settle all claims and controversies between them. The parties also executed a release. Pursuant to the settlement agreement, plaintiff was to receive $50,000 at the time of closing the settlement agreement, $2.6 million to be paid over a period of 25 years, assignment of SPS' claims against Ayres in the derivative suit, a 1990 Cadillac sedan, and complete affidavits by Mark and Clayton setting forth their personal knowledge of the involvement of Ayres in the alleged stock fraud scheme. SPS was to purchase all but one of Andrew's shares and all of his mother's shares in SPS and SFE at their par value of one cent per share. The agreement provided that in the event of default of any covenant in the agreement, SPS would have 120 days to cure, and if it did not cure within that time, Andrew and his mother could exercise an option to purchase 65% of the authorized shares of SPS for $65,000.[2]

Andrew brings the instant action, contending defendants misrepresented that they would make a full and complete disclosure of the involvement of Ayres in the alleged SPS stock fraud scheme, as provided in the settlement agreement, and that defendants failed to disclose the pending sale of SFE's assets to a competitor of SFE, in order to induce Andrew and his mother to sell their SFE stock to defendants for a grossly inadequate

---

1. *See Smith v. Ayres,* 845 F.2d 1360 (5th Cir. 1988), *appeal after remand,* 977 F.2d 946 (1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 2342, 124 L.Ed.2d 252 (1993). A related case in this legal hydra is *Smith Protective Servs. v. Martin,* 711 S.W.2d 675 (Tex.App.1986, no writ).

2. The settlement agreement defines SPS as including SFE, Marcla, Truth Verification, Southwest Business Consultants, and other entities or corporations related to SPS.

price. Andrew alleges claims for securities fraud, in violation of § 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and Rule 10b–5 promulgated thereunder; breach of and conspiracy to breach fiduciary duties; violation of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962(b), (c), and (d) ("civil RICO"); and common law fraud. Andrew also seeks specific performance of the settlement agreement, allowing him to exercise his option to purchase 65% of SPS, and attorney's fees.

In connection with the trial setting for this case, defendants issued a subpoena *duces tecum* to Tom James, Esq. (the "Mediator"), the individual who mediated settlement of the state court lawsuits. The subpoena commanded that he appear as a witness at trial and produce and permit inspection and copying of all documents in his possession "relating to mediation of Cause No. 86–5798–K, *Coralie Smith, et al. v. Clayton J. Smith, et al.,* in the 192nd Judicial District Court, Dallas County, Texas and Cause No. 84–3652–K in the 192nd Judicial District Court, Dallas County, Texas, *Smith Protective Services, Inc. v. Andrew L. Smith.*" Defendants seek to introduce the testimony of the Mediator because Andrew contends that Mark and Clayton defrauded him into signing the settlement agreement that resulted from the mediation process. Defendants maintain that the Mediator "is the only impartial witness to the concerns and attitudes expressed by [Andrew] during the private caucus sessions concerning both the affidavits and any disclosure of the future asset sale," and that the Mediator "is the only impartial witness to defendants' conduct and their statements concerning the affidavits during their private caucus sessions." Defendants urge that "[b]ecause [Andrew] alleges fraud, his conduct, state of mind, words and actions during the mediation immediately before the time he alleges he was defrauded are highly probative of any reliance he placed upon the alleged representations." They contend their own statements and conduct during their private sessions with the Mediator are likewise "extremely important for the jury to be able to consider."

The Mediator moved to quash the subpoena or, in the alternative, for a protective order. He argued that the requested testimony was prohibited by Tex.Civ.Prac. & Rem.Code Ann. § 154.073 (West Supp.1994), and Rule 12 of the Rules for Mediation promulgated by the state District Courts of Dallas County, Texas (the "Dallas District Court Mediation Rules"), and that any evidence would be inadmissible pursuant to Fed.R.Evid. 408. *Amicus curiae* The Association of Attorney–Mediators, Inc. ("AAM") supported the Mediator's motion.

The court referred the motion to the magistrate judge, who decided in favor of the Mediator and quashed the subpoena. The magistrate judge began his written order by assuming that the Mediator's testimony would not be rendered inadmissible by Rule 408. He found it unnecessary to decide whether Texas law and the Dallas District Court Mediation Rules were binding on this court because comity and the expectations of the Mediator and the parties at the time the mediation was conducted required this court to give due deference to the Texas law and rules. The magistrate judge then held that a mediator privilege applied, he assumed the privilege was a qualified one, and on the basis of the facts presented, he decided for public policy reasons that the privilege outweighed defendants' interest in obtaining the Mediator's records and testimony.

Defendants seek to overturn the magistrate judge's order on four grounds. Under the rubric "clearly erroneous" they urge that the order should be reversed because, first, there is no comity that this court must recognize since relevant Texas law empowers this court independently to determine the disclosure question; second, the expectations of the parties and the Mediator are not in issue; and third, Texas law does not prohibit disclosure of oral communications or written materials if they are otherwise admissible or discoverable independent of the alternative dispute resolution procedure. Contending fourth that the order is contrary to law, defendants urge that the magistrate judge abridged an obligation of Texas law by failing to conduct an *in camera* inspection, or to

allow a district judge to make such an inspection, before quashing the subpoena.

The Mediator, joined by *amicus curiae* AAM and plaintiff Andrew, urge the court to affirm the magistrate judge's order quashing the subpoena *duces tecum*.

## II

Pursuant to 28 U.S.C. § 636(b)(1)(A), a district judge may designate a magistrate judge to hear and determine nondispositive pretrial matters pending before the court. *See RTC v. Sands*, 151 F.R.D. 616, 618 (N.D.Tex.1993). Under this court's Miscellaneous Order No. 6, Rule 4(b)(2),[3] "no ruling of the magistrate judge in a matter that the magistrate judge is empowered to hear and determine shall be reversed, vacated, or modified on appeal unless the district judge shall determine, *inter alia*, that the magistrate judge's findings are clearly erroneous, or that the ruling is contrary to law, or constitutes an abuse of discretion." *RTC*, 151 F.R.D. at 618 (citing cases).

As in *RTC*, the court notes some confusion with respect to the standards of review that defendants have utilized in framing their objections. Defendants advance four arguments in support of reversing the magistrate judge's quashal order. In three instances they contend the order is clearly erroneous, yet their reasoning essentially asserts that the magistrate judge erred as a matter of law, thus acting contrary to law.

■ The court reemphasizes today the distinctions among the clearly erroneous, contrary to law, and abuse of discretion standards of review. The "clearly erroneous" standard applies to the factual components of the magistrate judge's decision. *See id.* at 619. Under this standard, the district court may not disturb a factual finding of the magistrate judge "unless, although there is evidence to support it, the reviewing court is left with the definite and firm conviction that a mistake has been committed." *Id.* (citing *Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564, 573, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985)). If a magistrate judge's "account of the evidence is plausible in light of the record viewed in its entirety," a district judge may not reverse it. *Id.*

■ When a party objects to a magistrate judge's ruling on the ground that it is contrary to law, the party must demonstrate that the magistrate judge erred in some respect in his legal conclusions. The magistrate judge's legal conclusions are freely reviewable by the district judge, who applies a *de novo* standard.

■ The "abuse of discretion standard applies to that vast area of ... choice that remains to the [magistrate judge] who has properly applied the law to fact findings that are not clearly erroneous." *In re REPH Acquisition Co.*, 134 B.R. 194, 202–03 (N.D.Tex.1991) (addressing standard in permanent injunction context). "An abuse of discretion exists only when there is definite and firm conviction that the court below committed clear error of judgment in the conclusion it reached upon a weighing of the relevant factors." *Conkling v. Turner*, 18 F.3d 1285, 1293 (5th Cir.1994) (internal quotation marks omitted). The term "abuse of discretion" does not imply intentional wrong, or bad faith, or misconduct, nor any reflection on the judge. *United States v. Walker*, 772 F.2d 1172, 1176 n. 9 (5th Cir.1985) (quoting *Black's Law Dictionary* (5th ed. 1979 at 10)).

Defendants' four challenges to the magistrate judge's order essentially posit that the magistrate judge erred as a matter of law. The court therefore holds that the order is

---

**3.** The court amended Miscellaneous Order No. 6, Rule 4 effective February 21, 1994. *See* Misc. Order No. 6 (Feb. 18, 1994). Miscellaneous Order No. 6, Rule 4(b)(2) has been replaced by Rule 4(a), which provides, in pertinent part:

> Review of an order entered by a magistrate judge in a pretrial matter not dispositive of a claim or defense of a party shall be governed by Fed.R.Civ.P. 72(a).

Misc. Order No. 6, Rule 4(a), *reprinted in* Texas Rules of Court: Federal at 269 (West Pamp. Supp.1994). Because defendants filed their objections to the magistrate judge's order on February 18, 1994, the court will apply the former version of Rule 4(b)(2), which is *reprinted in* Texas Rules of Court: Federal at 256 (West Pamp.Supp.1993).

freely reviewable for purposes of deciding this appeal.[4]

## III

Because the parties to this appeal have assumed the applicability of Texas law and the Dallas District Court Mediation Rules, the court briefly describes the Texas alternative dispute resolution statute and its confidentiality requirements and the local Dallas confidentiality rules.

### A

The mediation that brought about the settlement of the two state court lawsuits was convened on the state court's motion pursuant to the Alternative Dispute Resolution Procedures Act ("ADR Act"), codified as chapter 154 of the Texas Civil Practice and Remedies Code, Tex.Civ.Prac. & Rem.Code Ann. §§ 154.001–.073 (West Supp.1994). In 1987 the Texas Legislature enacted the ADR Act, a law that articulates the state's policy of encouraging peaceable resolution of disputes and the early settlement of pending litigation. *See Wylie Indep. Sch. Dist. v. TMC Foundations, Inc.*, 770 S.W.2d 19, 23 (Tex.App.1989, writ dism'd) (footnote omitted); *J.B.J. Distribs., Inc. v. Jaikaran*, 744 S.W.2d 379, 380 (Tex.App.1988, no writ). "The Texas Alternative Dispute Resolution Procedures Act ... sets forth a comprehensive procedural framework for the use of alternative dispute resolution procedures." *Downey v. Gregory*, 757 S.W.2d 524, 525 (Tex.App.1988, no writ). "The Act establishes a definite state policy to encourage the early settlement of pending litigation through voluntary settlement procedures and places the responsibility for carrying out this procedure on both trial and appellate courts." *Id.*; *see Decker v. Lindsay*, 824 S.W.2d 247, 250 (Tex.App.1992, no writ) ("Section 154.002 expresses the general policy that 'peaceable resolution of disputes' is to be encouraged through 'voluntary settlement procedures.'"

(quoting § 154.002)); *Gleason v. Lawson*, 850 S.W.2d 714, 717 (Tex.App.1993, no writ) ("[T]he explicit policy of chapter 154 is to encourage the peaceable resolution of disputes through 'voluntary' settlement procedures." (citing § 154.002)). Texas state courts are admonished by § 154.003 to carry out this policy. *Decker*, 824 S.W.2d at 250.

The ADR Act authorizes courts to refer a pending dispute to an alternative dispute resolution procedure at any point in the trial and appellate process. *Keene Corp. v. Gardner*, 837 S.W.2d 224, 231 (Tex.App.1992, writ denied) (citing *Downey*, 757 S.W.2d at 525; § 154.021). Courts have a statutory duty to encourage the peaceable resolution of disputes, particularly those affecting the parent-child relationship. *In re Cassey D.*, 783 S.W.2d 592, 598 (Tex.App.1990, no writ) (staying appeal in part and referring stayed portion of case to mediation pursuant to chapter 154). "A court cannot force the disputants to peaceably resolve their differences, but it can compel them to sit down with each other." *Decker*, 824 S.W.2d at 250. "Chapter 154 contemplates mandatory referral only, not mandatory negotiation." *Id.* at 251. A court cannot compel the parties to negotiate in good faith. *Id.*

Under the Texas ADR scheme, "[t]he job of a mediator is simply to facilitate communication between the parties and thereby encourage reconciliation, settlement and understanding among them." *In re Ames*, 860 S.W.2d 590, 592 (Tex.App.1993, no writ) (citing § 154.023(a)). It is hoped that "mediation will assist the parties in reaching a voluntary agreement that will serve to resolve their dispute and avoid the need for traditional litigation." *Id.* "A mediator may not impose his own judgment on the issues for that of the parties." § 154.023(b).

### B

The Texas ADR Act has been described as the most complete in conferring the cloak of

---

4. The present appeal is somewhat distinguishable from *RTC* in the sense that defendants have shouldered a *greater* burden by urging that the magistrate judge's rulings are clearly erroneous. By so characterizing three of their four contentions, defendants have accepted the obligation to overcome a deferential standard of review in lieu of a *de novo* standard. By contrast, in *RTC* the objecting party in part sought the benefit of a more favorable standard by making more than one "abuse of discretion argument parading as assertions of legal ... error." *RTC*, 151 F.R.D. at 620.

confidentiality on communications made during alternative dispute resolution procedures. *See* Michael D. Young & David S. Ross, *Confidentiality of Mediation Procedures,* C879 ALI–ABA 571, 578 (1993). "Texas is in the vanguard of affording protection to communications made during ADR procedures." *Id.*

In the ADR Act, there are two sections that impose requirements of confidentiality.[5] Section 154.053 prescribes the standards and duties of "impartial third parties," a term that includes mediators. This section contains two provisos that relate to confidentiality, § 154.053(b) and (c):

(b) Unless expressly authorized by the disclosing party, the impartial third party may not disclose to either party information given in confidence by the other and shall at all times maintain confidentiality with respect to communications relating to the subject matter of the dispute.

(c) Unless the parties agree otherwise, all matters, including the conduct and demeanor of the parties and their counsel during the settlement process, are confidential and may never be disclosed to anyone, including the appointing court.

In addition to § 154.053, the Act also contains § 154.073, entitled "Confidentiality of Communications in Dispute Resolution Procedures." This section addresses the confi-

dentiality requirements applicable to alternative dispute resolution participants and impartial third parties, including mediators. Section 154.073 states:

(a) Except as provided by Subsections (c) and (d), a communication relating to the subject matter of any civil or criminal dispute made by a participant in an alternative dispute resolution procedure, whether before or after the institution of formal judicial proceedings, is confidential, is not subject to disclosure, and may not be used as evidence against the participant in any judicial or administrative proceeding.

(b) Any record made at an alternative dispute resolution procedure is confidential, and the participants or the third party facilitating the procedure may not be required to testify in any proceedings relating to or arising out of the matter in dispute or be subject to process requiring disclosure of confidential information or data relating to or arising out of the matter in dispute.

(c) An oral communication or written material used in or made a part of an alternative dispute resolution procedure is admissible or discoverable if it is admissible or discoverable independent of the procedure.

(d) If this section conflicts with other legal requirements for disclosure of communications or materials, the issue of confidentiality may be presented to the court having

---

5. The court has located, and the parties have cited, only one Texas decision that applies the confidentiality provisions of chapter 154. In *Williams v. State,* 770 S.W.2d 948 (Tex.App.1989, no writ), a defendant convicted of theft of a necklace, *id.* at 948–49, challenged *inter alia* the sufficiency of the evidence to sustain his conviction, *id.* at 949. The defendant contended the evidence did not establish beyond a reasonable doubt that he stole the necklace with the intent to deprive the owner of the property. *Id.* Although the opinion is not entirely clear, the state apparently argued on appeal that evidence from an ADR procedure in which the defendant and complainant had participated prior to the defendant's arrest showed the evidence was sufficient to support the conviction. *See id.* The appellate court disagreed, holding:

Contrary to the State's assertions, we [cannot] consider any evidence from the dispute resolution procedure that [defendant] and complainant participated in prior to his arrest, as disclosures made in an ADR procedure are confidential, and not subject to disclosure.

*Id.* (citing § 154.073). The court nevertheless upheld the conviction because it found the complainant's testimony was otherwise sufficient to support a guilty verdict. *Id.*

*Williams* does not indicate whether the mediator was called as a witness, but it is a reasonable assumption that evidence from some source regarding what transpired during the procedure was introduced at trial. Otherwise, the state could not have relied upon it to argue that the proof supported the defendant's conviction. The state appellate court did not hold that the evidence was inadmissible. There is no indication that a witness to the mediation objected to testifying, or that the defendant objected to admission of the evidence, nor is there a description of the nature of the proof. The appellate court simply determined that evidence of what occurred during the procedure could not be considered in determining the sufficiency of the state's evidence of guilt.

jurisdiction of the proceedings to determine, in camera, whether the facts, circumstances, and context of the communications or materials sought to be disclosed warrant a protective order of the court or whether the communications or materials are subject to disclosure.

Augmenting the Texas ADR Act confidentiality provisions are equally expansive local court rules and orders. The order that initiated mediation of Andrew's state court lawsuits expressly stated that "[m]ediation is private, confidential and privileged from process and discovery." It specified that "[t]he Mediator shall not be a witness nor may the Mediator's records be subpoenaed or used as evidence." The order also provided that the parties and their counsel would be bound by the Rules for Mediation printed on the order. Rule 12 of the Dallas District Court Mediation Rules, entitled "Confidentiality," provides:

Confidential information disclosed to a Mediator by the parties or by witnesses in the course of the mediation shall not be divulged by the Mediator. All records, reports or other documents received by a mediator while serving in that capacity shall be confidential. The Mediator shall not be compelled to divulge such records or to testify in regard to the mediation in any adversary proceeding or judicial forum. Any party that violates this agreement shall pay all fees and expenses of the Mediator and other parties, including reasonable attorneys' fees, incurred in opposing the efforts to compel testimony or records from the Mediator.

The parties shall maintain the confidentiality of the mediation and shall not rely on, or introduce as evidence in any arbitral, judicial or other proceeding: a) views expressed or suggestions made by another party with respect to a possible settlement of the dispute; b) admissions made by another party in the course of the mediation proceedings; c) proposals made or views expressed by the Mediator; or d) the fact that another party had or had not indicated willingness to accept a proposal for settlement made by the Mediator.

## IV

Against this backdrop, the court now turns to the four grounds on which defendants seek to reverse the magistrate judge's order.

## A

In their first and second arguments, defendants maintain that the magistrate judge erred when he relied upon the principle of comity and considered the expectations of the Mediator and the parties at the time the mediation was conducted.

With respect to their first ground, defendants contend there is no comity that this court must recognize. Defendants do not contest the magistrate judge's determination that Texas law applies in this case. They at least implicitly agree with the magistrate judge's decision to give the Texas ADR Act controlling effect.[6] Instead, defendants argue that this court is fully empowered under the ADR Act to decide the confidentiality question for itself because § 154.073(d) permits the court having jurisdiction of the proceedings "to penetrate the confidentiality of alternative dispute resolution procedures."

Defendants urge second that the magistrate judge erred because neither the expectations of the parties nor of the Mediator are in issue. They posit that Andrew has no expectations of confidentiality because he has already waived the attorney-client privilege and any right of attorney work product. They urge that the Mediator has no legitimate expectations to be accounted for because the parties rather than the Mediator have the right to assert confidentiality, and because the evidence defendants seek will not be used against the Mediator.

■ These arguments misperceive the magistrate judge's holdings and thus present no basis to overturn his order. The magistrate judge relied upon the principle of comity and upon the expectations of the parties and the Mediator in order to give effect to the Texas ADR Act and Rule 12 of the Dallas

---

6. For example, they explicitly rely upon § 154.073(d) to argue in their fourth ground that the magistrate judge erred by failing to conduct an *in camera* hearing.

District Court Mediation Rules. The magistrate judge wrote:

> It is not necessary to decide whether the Texas rules are binding on this court. But in considering the issues presented this court is required to give due deference to those promulgations both on the basis of comity and in considering the expectations of the mediator and the parties at the time the mediation was conducted, including the confidentiality requirements under which the mediation was held and concluded.

Because the magistrate judge relied upon comity and the parties and Mediator's expectations as bases for invoking Texas law, and since defendants do not challenge the application of Texas law—arguing instead that the ADR Act does not entitle the Mediator to relief—the court discerns no basis to reverse the order on either of the initial two grounds presented.[7]

**B**

In their third argument, defendants urge that the magistrate judge erred when he expressed concern that

> Allowing a party to call a mediator as a witness in a subsequent proceeding would do violence to the finality of a prior dispute settled via alternative dispute resolution, even where all parties consent to a waiver of confidentiality.

Defendants contend this holding improperly overlooks that plaintiff Andrew has initiated suit based upon the mediated settlement agreement and has thus placed in issue the oral and written communications made during mediation.[8] They reason that it is error to permit Andrew to prosecute a fraud claim based on the mediated settlement agreement itself, while simultaneously depriving them of the opportunity to introduce probative evidence from the mediation process that could refute the claim. Defendants urge on the basis of § 154.073(c) that the Mediator should be compelled to testify because the oral communications and written materials in question are admissible or discoverable independent of the mediation procedure.

Defendants' reliance on § 154.073(c) is unavailing. This proviso states that

> An oral communication or written material used in or made a part of an alternative dispute resolution procedure is admissible or discoverable if it is admissible or discoverable independent of the procedure.

The court holds that § 154.073(c) should be interpreted to have the same effect as Tex. R.Civ.Evid. 408, which states, in pertinent part:

> This rule does not require the exclusion of any evidence otherwise discoverable merely because it is presented in the course of compromise negotiations.

In other words, § 154.073(c) provides that oral communications and written materials that are otherwise admissible or discoverable are not made inadmissible or non-discoverable solely because they have been uttered or disseminated in an alternative dispute resolution proceeding.[9] To interpret § 154.073(c) as do defendants would unjustifiably create an exception to the confidentiality proviso of § 154.073(b) that is not expressly set out in the ADR Act and that should not be impliedly recognized in the face of the Act's pellucid confidentiality requirements.

Defendants have not demonstrated that the Mediator possesses discoverable or admissible evidence derived apart from the mediation conference. This ground presents no basis to reverse the magistrate judge's order.

7. The magistrate judge correctly recognized that principles of comity enable a federal court to accord deference to a state-created privilege. *See, e.g., United States v. One Parcel of Prop.*, 930 F.2d 139, 141 (2d Cir.1991) (per curiam). Such state privileges are construed narrowly, however, and must yield to federal interests that outweigh them. *Id.*

8. Andrew contends his claims are not based on what was said during mediation. His concession apparently is intended to comply with § 154.-073(a), which prohibits the use of such communications as evidence against a participant. He also acknowledges, on the facts presented in the instant case, that he cannot call the Mediator as a witness.

9. *See* John G. Mebane, III, Comment, *An End to Settlement on the Courthouse Steps? Mediated Settlement Conferences in North Carolina Superior Courts*, 71 N.C.L.Rev. 1857, 1873 (1993) (analyzing N.C.R.Evid. 408) ("Where evidence can be discovered outside the mediation conference, the mere fact that it was learned in mediation will not make it inadmissible." (footnote omitted)).

## C

Finally, defendants maintain that the order is contrary to law because § 154.073(d) required the magistrate judge to conduct an *in camera* inspection before quashing the subpoena. They argue that by failing to make such an inquiry, the magistrate judge precluded them from demonstrating harm on appeal because there is no record of the content of the Mediator's testimony. Defendants posit that if the magistrate judge determined not to make an *in camera* inspection, he should have denied the motion to quash so that the district judge could conduct such an examination when the Mediator is called as a trial witness.

■ · The court disagrees with defendants' interpretation of § 154.073(d). This subsection of the ADR Act is an exception to the statute's otherwise broad prohibition against disclosing confidential oral communications and written materials. Subsection (d) permits the issue of confidentiality to be presented *in camera* to the court having jurisdiction of the proceedings if § 154.073's confidentiality requirements conflict with other legal requirements for disclosure of communications or materials.[10] Without § 154.073(d), the Texas ADR Act arguably would preclude even the presiding judge from learning the content of mediation communications. *See* § 154.053(c) ("Unless the parties agree otherwise, all matters, including the conduct and demeanor of the parties and

their counsel during the settlement process, are confidential and may never be disclosed to anyone, including the appointing court."). Defendants misread the proviso by urging that it mandates such a proceeding. The magistrate judge did not act contrary to law by failing to consider *in camera* the Mediator's testimony.

## D

A district judge will reverse a ruling of the magistrate judge in a nondispositive matter only for clearly erroneous fact findings, a ruling that is contrary to law, or a decision that constitutes an abuse of discretion. The four grounds that defendants advance in the present appeal do not provide any basis to disturb the magistrate judge's order, and it is affirmed.

## V

In the present case, defendants have assumed the applicability of the Texas ADR Act and Dallas District Court Mediation Rules in challenging the magistrate judge's order. The court need not therefore decide whether there is a mediator privilege,[11] and it declines to adopt the magistrate judge's recognition of such a privilege in today's case.[12] As the court will explain, federal law governs whether there is a mediator privilege in a case like the present one, the extent to which federal courts currently recognize such a privilege is narrow, and the Supreme

---

10. Certain exceptions are found in state mediation confidentiality laws. One that is noted frequently in commentaries applies when a participant has a duty to disclose a participant's admission of child abuse. *See, e.g.,* Young & Ross, *supra* § III(B), at 578 (under § 154.073(d) when the Texas ADR Act conflicts with other legal requirements for disclosure, such as when child abuse is reported in mediation, the court may apply a discretionary test to determine whether to allow disclosure or to issue a protective order); Perrin Rynders, *Confidentiality in Mediation: A Conflict Between Two Value Systems,* 72 Mich.B.J. 1016, 1017 (1993) (Michigan "Child Protection Law unambiguously requires at least some mediators to disclose confidences regarding child abuse").

11. By "mediator privilege" the court refers to a privilege invocable by the mediator, with or without the consent of a client or other mediation participant. In the present case the magistrate

judge recognized such a privilege in granting relief to a mediator who on his own sought to quash a subpoena. In this sense a mediator privilege is unlike one, such as the attorney-client privilege, that is controlled by the client and is therefore waivable. "Legislation is not always consistent in mediation, but typically mediator-client privileges *cannot* be waived by the client alone." Kevin Gibson, *Confidentiality in Mediation: A Moral Reassessment,* 1992 J.Disp.Resol. 25, 33 (1992) (footnote omitted), *available in* Westlaw, JLR Database, 1992 JDR 25, at *6.

12. The magistrate judge began his ruling by giving controlling effect to the Texas ADR Act and Dallas District Court Mediation Rules. He concluded the order by relying on "the privilege of precluding the interjection of mediator in the litigation process," and "[a]ssum[ed] without deciding that the privilege is qualified rather than absolute."

Court and Fifth Circuit will not confer a new privilege without carefully balancing the relevant competing interests. While confidentiality appears to be widely accepted in state law as a desirable component of the mediation process, there are legitimate countervailing interests to be accounted for in formulating a privilege that is invocable by a mediator, not the least of which is the venerable "right to every man's evidence." The privilege question should be decided only in a case that requires that the issue be resolved, and then only after carefully examining and weighing the relevant factors.

## A

■ Privileges in federal court are governed by Fed.R.Evid. 501, which provides:

Except as otherwise required by the Constitution of the United States or provided by Act of Congress or·in rules prescribed by the Supreme Court pursuant to statutory authority, the privilege of a witness, person, government, State, or political subdivision thereof shall be governed by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience. However, in civil actions and proceedings, with respect to an element of a claim or defense as to which State law supplies the rule of decision, the privilege of a witness, person, government, State, or political subdivision thereof shall be determined in accordance with State law.

*Id.* Although Rule 501 specifies that state law of privilege controls where state law supplies the rule of decision with respect to an element of a claim or defense, the federal law of privilege is paramount "where the .court's jurisdiction is premised upon a federal question, even if the witness-testimony is

relevant to a pendent state law count which may be controlled by a contrary state law of privilege." *Hancock v. Hobbs,* 967 F.2d 462, 467 (11th Cir.1992) (per curiam) (footnote omitted); *see Hancock v. Dodson,* 958 F.2d 1367, 1373 (6th Cir.1992). In the present case, Andrew's lawsuit invokes this court's federal question jurisdiction. He brings state law claims pursuant to this court's supplemental jurisdiction. Therefore, even if the mediator privilege issue arises only in the context of Andrew's fraud claim (the complaint actually shows that Andrew's actions for securities fraud and civil RICO—both federal question claims—are also grounded on some of the same alleged conduct), the federal law of privilege supersedes any contrary state law. Were the court to reach the question whether to recognize a mediator privilege, it would decide the issue as a matter of federal law.

## B

■ Federal court decisions that have adopted a mediator privilege have done so principally in the context of labor mediation. The courts have relied upon explicit national policy reasons to preclude mediators from testifying. *Amicus curiae* AAM has cited, and the court has found, only one published federal court opinion that has recognized the privilege on the basis of state law. The court has neither located, nor been pointed to, other published opinions that support a wider application of a federal mediator privilege.[13]

AAM relies heavily upon *NLRB v. Joseph Macaluso, Inc.,* 618 F.2d 51 (9th Cir.1980). In *Macaluso* the question presented was whether the National Labor Relations Board ("NLRB") erred in disallowing the testimony of a Federal Mediation and Conciliation Service ("FMCS") mediator. *Id.* at 52.[14] A

---

13. AAM has cited state court decisions that recognize such a privilege based on state law. *See Elizabeth Forward Sch. Dist. v. Pennsylvania Labor Relations Bd.,* 154 Pa.Commw. 5, 624 A.2d 215 (1992); *Fenton v. Howard,* 118 Ariz. 119, 575 P.2d 318 (1978) (en banc); *People v. Snyder,* 129 Misc.2d 137, 492 N.Y.S.2d 890 (N.Y.S.Ct. 1985).

14. Defendants contend *Macaluso* is distinguishable because there the court found it significant that the parties had voluntarily submitted to me-

diation but the Texas ADR Act is not voluntary. Defendants are correct that a Texas court can compel parties to "sit down with each other" although it "cannot force the disputants to peaceably resolve their differences." *Decker,* 824 S.W.2d at 250. The Texas ADR Act "contemplates mandatory referral only, not mandatory negotiation." *Id.* at 251. In *Macaluso* the court observed that no party is required to use the FMCS. *Macaluso,* 618 F.2d at 56. For purposes of the present discussion, the court need not

company that faced a charge of committing an unfair labor practice contended the mediator's testimony was crucial to show it had not reached an agreement with the union. *See id.* at 53. The NLRB policy is that mediators may not testify about the bargaining sessions they attend so that they may maintain the appearance of neutrality essential to successful performance of their task. *Id.*

The Ninth Circuit examined whether the purpose of preserving mediator effectiveness could prevail over "the fundamental principle of Anglo–American law that the public is entitled to every person's evidence." *See id.* at 53–54. The panel held, given the mediator's critical role as the tie-breaker witness, that revocation of the subpoena could be permitted only if denial of the mediator's testimony "has a public good transcending the normally predominant principle of utilizing all rational means for ascertaining truth." *Id.* at 54 (quoting *Elkins v. United States,* 364 U.S. 206, 234, 80 S.Ct. 1437, 1454, 4 L.Ed.2d 1669 (1960) (Frankfurter, J., dissenting)). "The public interest protected by revocation must be substantial." *Id.* The court held that the public interest in maintaining the perceived and actual impartiality of federal mediators outweighed the benefits derivable from the mediator's testimony. *Id.* In so doing, it relied upon the policy of the United States, as articulated by the Congress when it created the FMCS. *Id.* The court noted the critical role that the FMCS played in resolving labor disputes, and held that any activity that would significantly decrease the effectiveness of the service could threaten the industrial stability of the nation. *Id.* at 55. The court declined to permit the mediator to testify to "objective facts" only, because such a limitation would not dispel the perception of partiality created by mediator testimony. *Id.* at 56. The court concluded that complete exclusion of mediator testimony was necessary to the preservation of an effective system of labor mediation. *Id.*

In *Maine Cent. R.R. Co. v. Brotherhood of Maintenance of Way Emps.,* 117 F.R.D. 485, 486–87 (D.Me.1987), a district court applied *Macaluso* to grant a protective order in favor of a neutral arbitrator appointed by the Na-

tional Mediation Board. As in *Macaluso,* the arbitrator had acted as part of a conciliation process that had the explicit support of Congress. *See id.* at 486. The district court held that the National Mediation Board—charged with resolving railroad labor disputes—should be protected in the same manner as was the FMCS in *Macaluso. Id.*

One federal court has adopted a federal privilege based on state law. In *United States v. Gullo,* 672 F.Supp. 99 (W.D.N.Y. 1987), the district court suppressed a defendant's statements made during the course of a dispute resolution process conducted under the auspices of the Community Dispute Resolution Settlement Center ("Center"). *Id.* at 102. The Center operated pursuant to a program established by New York's Judiciary Law, and was administered and supervised under the direction of the chief administrator of the courts. *Id.* The defendant was one of two persons charged with participating in the use of extortionate means to collect, or attempt to collect, an extension of credit, in violation of 18 U.S.C. § 874. *Id.* at 101. A particular section of the applicable state law created a privilege of confidentiality for the mediation of arbitration proceedings and decisions. *Id.* at 103. The defendant contended *inter alia* that all information obtained from and arising out of the arbitration proceeding should be suppressed. *Id.*

The district court addressed whether the privilege afforded by the state confidentiality proviso must be recognized by the district court pursuant to Rule 501. *Id.* at 104. Analyzing and balancing four factors for determining whether to recognize specific privileges that are not firmly embedded in federal law, the court held the privilege must be recognized. *Id.* On the one hand, the court recognized the strong policy supporting full development of facts and admissibility in criminal cases. On the other hand, it gave weight to the fact that the confidentiality provision encouraged participation in dispute resolution in an informal atmosphere without restraint and intimidation, the privilege directly served to insure the effectiveness of the program and to promote continued support for and existence of the program, abro-

decide whether *Macaluso* and the Texas ADR Act are materially different in this respect, however.

gation of the privilege would place funding for the program in jeopardy, the prosecution had not shown any particularized need for the evidence, and the privilege "generally serves to foster participation in the program and serves to promote candor by those participating." *Id.*

**C**

Rule 501 does not "freeze" the law of privilege, but expressly envisions that the law will develop incrementally. *See Trammel v. United States,* 445 U.S. 40, 47, 100 S.Ct. 906, 911, 63 L.Ed.2d 186 (1980) ("In rejecting the proposed Rules and enacting Rule 501, Congress manifested an affirmative intention not to freeze the law of privilege."). In order for a new privilege to be adopted, the relevant competing interests must be appropriately considered and balanced.

The Supreme Court will not "create and apply an evidentiary privilege unless it 'promotes sufficiently important interests to outweigh the need for probative evidence.'" *University of Pennsylvania v. E.E.O.C.,* 493 U.S. 182, 189, 110 S.Ct. 577, 582, 107 L.Ed.2d 571 (1990) (quoting *Trammel,* 445 U.S. at 51, 100 S.Ct. at 912). Moreover, because the "testimonial exclusionary rules and privileges contravene the fundamental principle that the public has a right to every man's evidence, any such privilege must be strictly construed." *Id.* (quoting *United States v. Bryan,* 339 U.S. 323, 331, 70 S.Ct. 724, 730, 70 S.Ct. 724 (1950), and *Trammel,* 445 U.S. at 50, 100 S.Ct. at 912) (internal quotation marks and ellipses omitted). "[E]xceptions to the demand for every man's evidence are not lightly created nor expansively construed, for they are in derogation of the search for truth." *United States v. Nixon,* 418 U.S. 683, 710, 94 S.Ct. 3090, 3108, 41 L.Ed.2d 1039 (1974).

The Fifth Circuit views the role of courts in expanding privileges as a limited one. "Privileges are based upon the idea that certain societal values are more important than the search for truth. There is no question that the doctrine of privilege or immunity from testifying has been narrowly proscribed." *In re Dinnan,* 661 F.2d 426, 429 (5th Cir. Unit B Nov. 1981), *cert. denied,* 457 U.S. 1106, 102 S.Ct. 2904, 73 L.Ed.2d 1314 (1982). "[J]udge-made privileges have fallen into disfavor." *Id.* (footnote omitted). "[T]here has been a notable hostility on the part of the judiciary to recognizing new privileges." *Id.* at 430 (footnote omitted). Privileges are strongly disfavored in federal practice. *American Civil Liberties Union v. Finch,* 638 F.2d 1336, 1344 (5th Cir. Unit A Mar. 1981). "While a number of new privileges have been established recently, they generally have been statutorily created." *Dinnan,* 661 F.2d at 429 (footnote omitted).

To say that the Supreme Court and the Fifth Circuit will not blithely recognize a new privilege is not, of course, to reject adoption of a qualified mediator privilege in the proper case. The determination whether to recognize a *mediator* privilege should not be resolved, however, at the level of generality represented by examination of *mediation* confidentiality. To accept as a given that the process of private party[15] mediation should take place in confidence[16] is not of itself sufficient to excuse a mediator from an obligation of disclosure upon the request of a disputant. When the question to be resolved is whether the mediator should have protected status, the balancing of competing interests will only properly take place in the

---

**15.** The court does not refer to mediation involving government-entity parties. No government unit is a party to the present case, and the debate concerning confidential treatment of this type of mediation involves issues that are not germane to the court's discussion. *Compare* Will Pryor & Robert M. O'Boyle, *Public Policy ADR: Confidentiality in Conflict?,* 46 SMU L.Rev. 2207 (1993), *with* Thomas S. Leatherbury & Mark A. Cover, *Keeping Public Mediation Public: Exploring the Conflict Between Confidential Mediation and Open Government,* 46 SMU L.Rev. 2221 (1993).

**16.** There is ample support for the proposition that the mediation process should be treated—as are other settlement mechanisms—as confidential. It is said that "confidentiality should be recognized as a fundamental aspect of mediation," Rynders, *supra* note 10, at 1017, that "[r]ules compromising such confidentiality will ultimately compromise the integrity of mediation, and even the integrity of responsible mediators," *id.,* and that "[t]he guarantee of confidentiality in mediation is crucial if mediation is to meet its high expectations," Mebane, *supra* note 9, at 1872.

context of the mediator, not of mediation in its broadest sense.

In this narrower and more relevant setting, the court notes that "[m]ost states have passed laws protecting communications made ... by the mediator if those communications relate to the mediation." Young & Ross, *supra* § III(B), at 577. "Many states grant a privilege to communications by the mediator." *Id.* at 575. Several states have explicitly insulated mediators from compulsory process and testimony regarding confidential oral and written communications made during the mediation process. *See, e.g.,* Arkansas, 1993 Ark. Acts 641, § 6(b); [17] Colorado, Colo.Rev.Stat.Ann. § 13–22–307 (West 1989 & Supp.1991); Illinois, 710 ILCS 20/6 (1992); Iowa, Iowa Code § 679.12 (1991); Massachusetts, Mass.Ann.Laws ch. 233, § 23C (Law Co-op.1985); Michigan, Mich.Comp.Laws Ann. § 691.1557 (West Supp.1991); [18] Nebraska, 1994 Neb.Laws 868; Nevada, Nev. Rev.Stat.Ann. § 48.109 (1991); Oklahoma, Okl.Stat. tit. 12, § 1805(C); [19] Rhode Island, R.I.Gen.Laws § 9–19–44 (1992); and Texas, Tex.Civ.Prac. & Rem.Code Ann. § 154.073 (West Supp.1994).[20]

Protections of this type are justified on various grounds. One basis is the perceived need to preserve the appearance of the mediator's impartiality and neutrality. *See Macaluso,* 618 F.2d at 54 (public interest in maintaining perceived and actual impartiality outweighed benefits derivable from mediator's

testimony); John G. Mebane, III, Comment, *An End to Settlement on the Courthouse Steps? Mediated Settlement Conferences in North Carolina Superior Courts,* 71 N.C.L.Rev. 1857, 1872 (1993) ("Any fear that the mediator may subsequently testify against the parties could ruin the perception of the mediator as neutral." (footnote omitted)); Young & Ross, *supra* § III(B), at 577 (citing the "[n]eed to protect the mediator's reputation for neutrality"). Another is an apprehension that qualified individuals will not serve as mediators out of concern for being required to testify. *See Maine Cent. R.R.,* 117 F.R.D. at 486–87 ("Moreover, the Court thinks it likely that it will be increasingly difficult to find able people to serve as mediators if they know that they might later have to testify concerning the manner in which their arbitrations are conducted."); Young & Ross, *supra* § III(B), at 577 ("Potential volunteers may choose not to serve as mediators for fear of being forced to testify on [a] regular basis.").

Yet at a time when state-law support for confidentiality in mediation is apparently increasing, the protections accorded are still characterized as uneven and lacking uniformity. *See* Young & Ross, *supra* § III(B), at 575. This is attributed to an absence of consensus concerning the scope of the right of confidentiality. "The unsettled state of the law reflects disagreement among judges and legislators on the weight of competing interests[.]" *Id.* Proponents of a mediator

17. *See* Charles L. Schlumberger, *Alternative Dispute Resolution and Acts 287 & 641 of 1993: A Small Step or a Giant Leap?,* 28 Ark.Law. 9, 11 (1994) (referring to § 6, entitled "Statutory Privilege of Non–Disclosure," as "effectively accord[ing] a statutory privilege against disclosure of matters presented during the course of ADR"). Section 6(b) is similar in terms to § 154.073(b) of the Texas ADR Act.

18. The Michigan Community Dispute Resolution Act is discussed in Rynders, *supra* note 10, at 1016–17, and Kristina M. Kerwin, Note, *The Discoverability of Settlement and ADR Communications: Federal Rule of Evidence 408 and Beyond,* 12 Rev.Litig. 665, 681–82 (1993).

19. The Oklahoma Dispute Resolution Act is discussed in Kerwin, *supra* note 18, at 681.

20. Of course, the fact that a state recognizes a privilege does not lead inexorably to the conclusion that federal law would adopt the same privi-

lege. As the Fifth Circuit has stated, "[t]hat the courts of a particular state would recognize a given privilege will not often of itself justify a federal court in applying that privilege." *American Civil Liberties Union,* 638 F.2d at 1343. Federal courts in fact have declined to recognize certain state privileges. *See, e.g., Hancock,* 967 F.2d at 467 (declining to recognize psychiatrist-patient privilege provided by Georgia law); *United States v. One Parcel of Prop.,* 930 F.2d at 141 (holding that state law protecting disclosure of erased arrest records would not be recognized as federal privilege); *Coastal Fuels of P.R., Inc. v. Caribbean Petrol. Corp.,* 830 F.Supp. 80, 81 (D.P.R.1993) (refusing to apply state law account-ant-client privilege that had not been recognized by federal courts); *Pagano v. Oroville Hosp.,* 145 F.R.D. 683, 689–90 & 695 (E.D.Cal.1993) (declining to recognize California physician-patient and medical peer review privileges).

privilege must reckon with the important right of litigants to obtain all available evidence, a right that arguably is paramount to some of the interests relied upon to justify immunizing mediators from compulsory disclosure. And certain of the reasons on which advocates of a mediator privilege stand are subject to question. There are those who challenge the validity of concerns regarding an appearance of mediator impartiality. *See* Kevin Gibson, *Confidentiality in Mediation: A Moral Reassessment,* 1992 J.Disp.Resol. 25, 46, 48 (1992), *available in* Westlaw, JLR Database, 1992 JDR 25, at *12–*13 (contending "[t]here are two dubious lines of reasoning behind the assumption that mediator testimony will inevitably compromise the perception of impartiality," and arguing that the "key premise" that confidentiality is necessary to protect the reputation of impartiality "is not as strong as it initially appears, and it alone cannot adequately justify confidentiality in all cases"). Furthermore, one can arguably question the validity of predictions of a shortage of mediators—including able ones—if a mediator privilege is not adopted. *See* Louis J. Weber, Jr., *Court–Referred ADR and the Lawyer–Mediator: In Service of Whom?,* 46 SMU L.Rev. 2113, 2114–15 (1993) (noting that following passage of Texas ADR Act in 1987, coupled with a recession and general economic downturn in Texas that soured lawyer income, ADR "suddenly" became popular; pointing out that in Dallas County, Texas, where the vast majority of court-referred mediations are made to attorneys who are on appointment lists kept by the courts or ADR coordinator, inclusion on the lists "is aggressively pursued by almost all lawyers interested in receiving court appointments;" and stating, "One has only to observe the abundant lawyer-mediator marketing as evidence of the strong revenue interest court-referred ADR has to lawyers competing in a slumping or declining lawyer economy.").

**E**

When a litigant seeks to assert a privilege not recognized in the common law, the court must test it by balancing the policies behind the privilege against those favoring disclosure. *American Civil Liberties Union,* 638

F.2d at 1343. Yet it is precisely because this process must be performed carefully, taking into account all relevant interests, that the privilege should neither be adopted nor rejected in a case such as the present one that does not squarely present the issue. The court therefore leaves the decision to the proper case.

\*     \*     \*

The magistrate judge's order quashing the subpoena *duces tecum* is

AFFIRMED.