### In re Daniel S. CARTWRIGHT, Relator.

### No. 01–01–00948–CV.

Court of Appeals of Texas, Houston (1st Dist.).

April 3, 2003.

Shawn Casey, Shawn Casey & Associates, Houston, for Relator.

Charles B. Musslewhite, Jr., Law Offices of Charles B. Musslewhite, Jr., John F. Nichols, Sr., Law Offices of John Nichols, Sr., Joe Phillips, Houston, for Real Party in Interest.

Panel consists of Justices NUCHIA, JENNINGS, and WILSON.*

## OPINION ON REHEARING

SAM NUCHIA, Justice.

The opinion issued on April 4, 2002 is withdrawn, and this opinion is issued in its place.

Relator, Daniel S. Cartwright, filed a petition for writ of mandamus challenging the trial court's order appointing an arbitrator other than the one named in the parties' agreement to arbitrate and, in the alternative, challenging the trial court's order appointing an arbitrator who had previously acted as a mediator in the same parties' dispute regarding possession of their child. We deny writ on the first issue and grant writ on the second.

## BACKGROUND

Daniel Cartwright and Gwyn Cartwright were divorced in December 1997. In an agreement incident to divorce (AID), they included the following provision for mediation and arbitration:

> Any claim or controversy arising out of the Final Decree of Divorce, Cartwright Operating Agreement, or the Agreement Incident to Divorce that cannot be resolved by direct negotiation will be mediated as provided in chapter 154 of the Texas Civil Practices and Remedies Code with JAMES PATRICK SMITH. If the parties cannot resolve the matter through mediation, then JAMES PATRICK SMITH shall be the arbitrator to arbitrate all disputes.

In October 1999, Gwyn filed a lawsuit in the 165th Civil District Court against Daniel and others, asserting property claims. In January 2001, Daniel filed a suit affecting the parent-child relationship (SAPCR) under the original cause number 96–47718 in the 245th District Court, seeking to modify his possession of and access to the parties' child. The 165th District Court concluded that Gwyn's property claims against Daniel were for breach of the AID and transferred that portion of the case to the 245th District Court, where the case was given the number 96–47718–B (the B-case).

Daniel filed a motion to compel arbitration in the B-case in accordance with the AID. At a hearing on March 13, 2001, Gwyn agreed to participate in a mediation of the property issues, but objected to

* The Honorable Justice Davie L. Wilson retired on March 30, 2002. Justice Wilson continues to sit by assignment on this case, which was originally submitted on January 18, 2002.

arbitration on the basis that the agreement was not for binding arbitration and, therefore, arbitration would be a waste of time.[1] Gwyn also objected to Smith as the arbitrator. On March 22, 2001, the trial court signed an order compelling mediation/arbitration. The court ordered the parties to mediate and, if necessary, to arbitrate all contractual and property issues with Smith "no later than May 15, 2001." The order compelling mediation/arbitration bore the cause number 1996–47718.

On April 17, in a letter to Smith, Daniel's counsel indicated that the mediation was rescheduled to May 3 and the arbitration to May 4.[2] On April 18, Gwyn's counsel wrote Smith, saying that counsel agreed to mediate on May 3, but that he considered May 4 too soon to arbitrate the case due to some outstanding discovery. He also informed Smith that Daniel's counsel opposed the motion to extend the time of the arbitration. On April 19, Daniel's counsel wrote Smith to say, "I believe we should go forward with the arbitration on May 4th as scheduled." On April 23, Daniel's counsel wrote Smith, defending his client's compliance with discovery matters and again stating that he thought the mediation and arbitration should proceed as previously scheduled. On April 26, in a hearing before Smith, Gwyn's counsel indicated that he had filed a motion asking the trial court to extend the arbitration deadline, but that the court had not given him a hearing on the motion.

On May 2, Daniel's counsel wrote Smith, saying there was confusion regarding the dates for mediation and arbitration, that Gwyn's counsel had complained about the May 4 arbitration, and that Daniel's counsel had learned that Gwyn's counsel had issued a subpoena for the appearance at the arbitration hearing of a witness whom Daniel's counsel had been trying to depose. Daniel's counsel proposed taking the witness's deposition and said that the arbitration could be conducted "as soon as reasonably possible" following the deposition. In the letter, Daniel's counsel said that he had spoken with Gwyn's counsel that same morning to reschedule the mediation "closer to the arbitration" and that Gwyn's counsel said that he intended to go forward with the arbitration as scheduled.

On May 3, Gwyn's counsel appeared at Smith's office with Gwyn and a court reporter and made a certificate of non-appearance in which he stated that he and Gwyn had shown up in good faith to mediate; that neither Daniel, his counsel, nor Smith had appeared; that the mediation had apparently been cancelled; and that Gwyn's counsel had received no notice of the cancellation. Gwyn's counsel attached, as exhibits, the correspondence from the attorneys to Smith, the order compelling mediation, an unsigned notice of mediation, and one page of the transcript of the April 26 hearing.

Meanwhile, a notice of intent to dismiss had been sent by the district clerk to counsel for both parties on March 22. On April 20, the B-case was dismissed for want of prosecution.

In a telephone conference on August 22, the trial court instructed the parties to complete arbitration by September 7. On August 23, the trial court issued an order ordering mediation on September 4 and arbitration to be completed by September 7, with the arbitrator's rulings delivered to

1. Gwyn agreed that one issue, the nature and amount of attorney referral fees to be received by Daniel, was subject to binding arbitration in the AID, but she argued that the remaining property issues were not.

2. The record does not show the originally scheduled date of the mediation/arbitration.

the court by September 10. The order also set the case for trial beginning October 25, 2001. On August 31, Daniel filed a motion for continuance that stated that Daniel's lead counsel was scheduled for trial in another case on September 4. The continuance was granted.

On September 26, the date on which mediation was to begin, Smith conducted a hearing on the record. At this hearing, Smith learned, apparently for the first time, that the B-case had been dismissed in April for want of prosecution. Daniel's counsel argued that, because of the dismissal, there were no property claims before the court. Gwyn's counsel stated that he had only recently learned of the dismissal from Daniel's counsel. Various accusations of unprofessional behavior were exchanged between counsel. Smith concluded that, in light of the dismissal of the property suit—the B-case—there was doubt about his jurisdiction to proceed with the arbitration, as well as doubt about the validity of any orders he had issued in the previous months. As a result, the mediation did not go forward. Neither counsel informed Smith that, on September 18, Gwyn had filed an amended petition containing Gwyn's claims in both the SAPCR and property suit.

On October 11, the trial court held a hearing at which the parties each presented their own attempts to proceed with the arbitration and their opponent's resistance to the arbitration. The trial court was informed that Smith would not be available to arbitrate the issues before the trial setting. The trial court then indicated that, if Smith was not available, the court would appoint another arbitrator. On that same date, the trial court issued an order for the parties to arbitrate their claims before the Honorable Mary Sean O'Reilly beginning on October 20 and continuing October 21 and 22 until conclusion. Daniel objected that the trial court could not appoint any arbitrator other that one named in the AID and that, if the court could name another arbitrator, it could not be Judge O'Reilly because she had mediated the parties' dispute over possession of their child in the SAPCR and, as a mediator, she had had access to privileged information.

On October 17, 2001, Gwyn filed a response to Daniel's objection and requested, under section 171.041(b) of the Texas Arbitration Act (TAA),[3] that the trial court appoint Judge O'Reilly as arbitrator of the property issues. Gwyn attached a copy of Judge O'Reilly's vitae.

At a hearing on October 18 to consider Daniel's objections, the trial court stated that another arbitrator had been appointed because of the delays in arbitrating with Smith and because Smith was at that time out of the country and would not be available to arbitrate the property issues before October 25, the date set for trial and the ultimate arbitration deadline set by the court. The court reminded the parties that they had agreed to each of the dates set for arbitration, and the court said that both sides were guilty of dragging out the arbitration process. Regarding the objection to Judge O'Reilly, the court said,

> The arbitrator mediated the child custody issues, nothing dealing with property. As far as the Court is concerned, as far as this Court knows, unless there is some proof otherwise, no property issues have been before this mediator. So this Court's order to mediate with that arbitrator on those dates will stand.

Following this ruling, Daniel filed this petition for writ of mandamus and an interloc-

---

**3.** Tex. Civ. Prac. & Rem.Code Ann. §§ 171.001– .098 (Vernon Supp.2003).

utory appeal.[4]

## DISCUSSION

■ Mandamus issues only to correct a clear abuse of discretion or the violation of a duty imposed by law when there is no other adequate remedy at law. *Johnson v. Fourth Court of Appeals,* 700 S.W.2d 916, 917 (Tex.1985). A trial court abuses its discretion only when its decision is so arbitrary and unreasonable that the decision amounts to a clear and prejudicial error of law. *Cent. Nat'l Ins. Co. of Omaha v. Lerner,* 856 S.W.2d 492, 494 (Tex.App.-Houston [1st Dist.] 1993, orig. proceeding).

### Appointment of Arbitrator Other Than Smith

In his first issue, Daniel contends that the trial court abused its discretion in appointing an arbitrator other than Smith, the individual expressly agreed to in the AID. Daniel argues that the TAA applies to this case and, therefore, the trial court may not appoint a different arbitrator unless the appointment complies with section 171.041(b) of the TAA. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 171.041 (Vernon Supp. 2003). Daniel complains that no party made the required application stating the nature of the issues to be arbitrated and the qualifications of the proposed arbitrator and, in addition, the named arbitrator was not unable to act. Daniel also contends that it was improper for the trial court to impose a timetable for the arbitration.

On the other hand, Gwyn contends that the Alternative Dispute Resolution Act (the ADR Act)[5] applies to this case. The ADR Act provides for nonbinding arbitra-

tion. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 154.027 (Vernon 1997). Gwyn also argues that she complied with section 171.041(b) of the TAA in her request that Judge O'Reilly be appointed as arbitrator.

■ The TAA applies to an arbitration if the arbitration is binding. The TAA, by its own terms, cannot apply to nonbinding arbitration. *See, e.g.,* TEX. CIV. PRAC. & REM.CODE ANN. §§ 171.053–.054, 171.081, 171.087–.092 (Vernon Supp.2003) (pertaining to the arbitration award and its modification or correction, vacation, confirmation, and enforcement). The TAA necessarily contemplates that the arbitration award be binding, and it makes no provision for a nonbinding arbitration procedure. *Porter & Clements, L.L.P. v. Stone,* 935 S.W.2d 217, 221 (Tex.App.-Houston [1st Dist.] 1996, no writ). Therefore, to determine whether the trial court abused its discretion in appointing a different arbitrator, we must first determine whether the parties agreed to binding or nonbinding arbitration.

Chapter 154 applies to court-ordered referrals to alternative methods of dispute resolution, not to private, contractual agreements to resolve disputes. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 154.021 (Vernon 1997); *Porter & Clements,* 935 S.W.2d at 220. When a court orders arbitration of a pending dispute under chapter 154, the arbitration is nonbinding unless the parties stipulate in advance that it will be binding. TEX. CIV. PRAC. & REM.CODE ANN. § 154.027 (Vernon 1997).

The provision in the AID for mediation invoked chapter 154 of the Texas Civil Practices and Remedies Code. *See* TEX. CIV. PRAC. & REM.CODE ANN. §§ 154.001–.073

---

4. Daniel's interlocutory appeal has been dismissed for lack of jurisdiction. *See Cartwright v. Cartwright,* no. 01–01–00946–CV, 2002 WL 501642 (Tex.App.-Houston [1st Dist.]

Mar. 28, 2002, no pet.) (not designated for publication).

5. TEX. CIV. PRAC. & REM CODE ANN. §§ 154.001–.073 (Vernon 1997 & Supp.2003).

(Vernon 1997 & Supp.2003). However, chapter 154 is not mentioned in the AID with reference to arbitration. Furthermore, the trial court's order to arbitrate was not initiated by the court; it was an order enforcing the parties' agreement to arbitrate. Private, contractual arbitration is governed by the TAA, which provides,

> A written agreement to arbitrate is valid and enforceable if the agreement is to arbitrate a controversy that:
>
> (1) exists at the time of the agreement; or
>
> (2) arises between the parties after the date of the agreement.

TEX. CIV. PRAC. & REM.CODE ANN. § 171.001(a) (Vernon Supp.2003). The arbitration agreement in this case was a written agreement to arbitrate a controversy that arose between the parties after the date of the agreement. In addition, the language of the agreement strongly implies that the arbitration is intended to resolve the controversy ("If the parties cannot resolve the matter through mediation, then [Smith] shall be the arbitrator to arbitrate all disputes."). A nonbinding arbitration does not, of itself, resolve a dispute. See TEX. CIV. PRAC. & REM.CODE ANN. § 154.027 (Vernon 1997) (a nonbinding arbitration "serves only as a basis for the parties' further settlement negotiations"). We hold that the parties, in the AID, agreed to binding arbitration. We further hold that the TAA applies to the arbitration in this case.

■ We next consider whether the trial court's appointment of a different arbitrator complied with section 171.041(b). Section 171.041(b) provides:

> The court, on application of a party stating the nature of the issues to be arbitrated and the qualifications of the proposed arbitrators, shall appoint one or more qualified arbitrators if:
>
> . . .

> (2) the agreed method fails or cannot be followed; or
>
> (3) an appointed arbitrator fails or is unable to act and a successor has not been appointed.

TEX. CIV. PRAC. & REM.CODE ANN. § 171.041(b) (Vernon Supp.2003).

The trial court's first arbitration order was signed on March 13, 2001. That order provided that the arbitration was to be held no later than May 15, 2001. The arbitration was scheduled and reset several times. On August 23, 2001, the trial court signed another order providing that the arbitration was to take place on September 4, 2001 and setting the trial date for October 25, 2001. The parties did not arbitrate on September 4, 2001. At a hearing on October 11, the trial court was informed that Smith would not be available to arbitrate the issues before the trial setting. The trial court then signed an order appointing Judge O'Reilly as arbitrator, and Daniel objected. On October 17, 2001, Gwyn filed a response to Daniel's objection and requested, under section 171.041(b), that the trial court appoint Judge O'Reilly as arbitrator of the property issues. Gwyn attached a copy of Judge O'Reilly's vitae.

The proceedings on October 11 clearly established the parties' efforts to delay the arbitration and to frustrate the court's and the arbitrator's efforts to resolve the property issues. Under these circumstances, the trial court could have reasonably believed that the agreed method of arbitration had failed. See id. § 171.041(b)(2).

The record before us does not establish whether one of the parties requested that Judge O'Reilly be appointed as arbitrator or the court, sua sponte, made the appointment. However, upon Daniel's objection, Gwyn filed a response in support of the trial court's appointment of Judge O'Reilly. This response stated that there was no

dispute regarding the scope of the "property issues" to be referred to the arbitrator. Furthermore, the record of the October 11 hearing established that the trial court knew the nature of the issues to be arbitrated. Gwyn attached Judge O'Reilly's vitae, which showed Judge O'Reilly's qualifications to act as arbitrator in the case. We hold that Gwyn's response substantially complied with section 171.041(b). *See id.* § 171.041(b) (Vernon Supp.2003).

In light of our determination that the trial court could have reasonably believed that the parties' agreed method of arbitration had failed and our holding that Gwyn substantially complied with section 171.041(b), we further hold that the trial court did not abuse its discretion in appointing an arbitrator other than the one named in the arbitration agreement.

### *The Court–Ordered Arbitration Timetable*

■ Daniel also complains that the trial court improperly imposed a timetable for the arbitration. Daniel directs us to section 171.044, which provides, "Unless otherwise provided by the agreement to arbitrate, the arbitrators shall set a time and place for the hearing and notify each party." TEX. CIV. PRAC. & REM.CODE ANN. § 171.044(a) (Vernon Supp.2003). Daniel argues that subsection (c), which states that the court "may direct the arbitrators to proceed promptly with the hearing and determination of the controversy," did not give the court the authority to require the arbitration to proceed beginning October 20 with Judge O'Reilly, rather than on October 24 with Smith. Daniel characterizes the suggested October 24 date as "comparatively prompt."

■ A trial court has the inherent authority to control the disposition of cases on its docket. *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 240 (Tex.2001). Here, the parties had been engaging in delaying tactics since April. The trial court was not required to postpone disposition of this case indefinitely while the parties argued about setting the arbitration. We hold that the trial court did not abuse its discretion in setting a reasonable deadline and requiring the parties to complete arbitration before the date of their trial setting.

We overrule Daniel's first issue.

### *The Appointment of Judge O'Reilly as Arbitrator*

■ In his second issue, Daniel contends that the trial court abused its discretion in appointing Judge O'Reilly as arbitrator after she had served as the parties' mediator in the SAPCR. Daniel argues that Judge O'Reilly is disqualified to act as an impartial arbitrator because of privileged information to which she was privy in her role as mediator.

Gwyn counters that (1) Daniel's complaint is too general and the trial court has not seen or ruled on the supposed confidential information; (2) as a former judge, Judge O'Reilly is capable of disregarding any information that is confidential; and (3) Judge O'Reilly's service as both mediator and arbitrator is no different from the proposed service of Smith in both capacities.

■ We find no statute or case law directly applicable to the confidentiality of contractual mediations. However, we conclude that the provisions for confidentiality set out in chapter 154 of the Texas Civil Practice and Remedies Code, which applies to court-ordered mediations, are guidelines to be followed in private, contractual mediations.

Section 154.073(a) provides that all communications made to a mediator are confidential, are not subject to disclosure, and may not be used as evidence against the participant in any judicial or administra-

tive proceeding. Tex. Civ. Prac. & Rem. Code Ann. § 154.073(a) (Vernon Supp. 2003). In addition, all matters concerning a mediation are confidential and may not be disclosed even to the appointing court. Tex. Civ. Prac. & Rem.Code Ann. § 154.053(c) (Vernon Supp.2003). Thus, a mediator is in the position of receiving the parties' confidential information, which may not be revealed to the court or to any other person. If the mediator is later appointed to be the arbitrator between the same parties, he or she is likely to be in the possession of information that either or both of those parties would not have chosen to reveal to an arbitrator.

 Requiring Daniel to present prejudicial, confidential information to the trial court in chambers for a ruling on his objection to Judge O'Reilly, as Gwyn proposes, would defeat the purpose of section 154.053. The mediation process encourages candid disclosures, including disclosures of confidential information, to a mediator. It is the potential for the use of that confidential information that creates the problem when the mediator, over the objection of one of the parties, becomes the arbitrator of the same or a related dispute.[6] Just as it would be improper for a mediator to disclose any confidential information to another arbitrator of the parties' dispute, it is also improper for the mediator to act as the arbitrator in the same or a related dispute without the express consent of the parties.

**6.** The Ethical Guidelines for Mediators, promulgated by the Alternative Dispute Resolution Section of the Texas State Bar, provides guidance in such proceedings in guideline number 12, which states, "A person serving as a mediator generally should not subsequently serve as a judge, master, guardian ad litem, or in any other judicial or quasi-judicial capacity in matters that are the subject of the mediation." The comment to this guideline provides,

We know of no basis for assuming that judges "routinely see confidential, prejudicial information during pre-trial proceedings," as asserted by Gwyn, but, if the parties reveal such information to the trial court, they do so at their peril and with the knowledge that the judge will be deciding the merits of their dispute. That argument cannot justify appointing, over a party's objection, a mediator to function as an arbitrator in the same or a related dispute.

Finally, Gwyn's argument that Judge O'Reilly's service in both capacities is no different from Smith's service in both is without merit. The parties selected Smith to serve as mediator and, if the issues were not resolved, to serve as arbitrator. Therefore, the parties would have known, when they disclosed confidential information to Smith during the mediation, that the information could be used by him in making his award as arbitrator. The parties then could have made informed decisions about what to disclose to the mediator. Because they did not know, when Judge O'Reilly mediated the SAPCR, that she would also later be their arbitrator, the parties had no opportunity to make such an informed decision about their disclosures during the mediation.

For these reasons, we hold that the trial court, in appointing Judge O'Reilly, the parties' mediator, to serve as arbitrator, abused its discretion.

We sustain Daniel's second issue.

> [W]here an impasse has been declared at the conclusion of a mediation, the mediator *if requested and agreed to by all parties*, may serve as the arbitrator in a binding arbitration of the dispute....
> *Ethical Guidelines for Mediators*, Alternative Dispute Resolution Section of the Texas State Bar (emphasis added).

## CONCLUSION

We deny the petition for writ of mandamus as it relates to the appointment of an arbitrator other that James Patrick Smith. However, in light of the parties' agreement to mediate, and, if necessary, to arbitrate their property dispute with James Patrick Smith, our ruling is not to be understood as a basis for appointing a substitute mediator/arbitrator unless James Patrick Smith is unable to act as the parties' mediator/arbitrator prior to any new trial setting.

We conditionally grant the petition for writ of mandamus only as it relates to the appointment of the Honorable Mary Sean O'Reilly as arbitrator of the parties' property and contractual disputes. We direct the trial court to vacate its October 11, 2001 order appointing the her as arbitrator. We are confident that the trial court will promptly comply with our opinion. The writ will issue only if the court does not do so.