COURT OF APPEALS

                                                 SECOND
DISTRICT OF TEXAS

                                                                FORT
WORTH

 

 

                                        NO.
2-06-039-CV

 

 

RONALD C. GASKIN                                                            APPELLANT

 

                                                   V.

 

LEANNE J. GASKIN                                                                APPELLEE

 

                                              ------------

 

            FROM
THE 362ND DISTRICT COURT OF DENTON COUNTY

 

                                              ------------

 

                                MEMORANDUM
OPINION[1]

 

                                              ------------

I.  Introduction

In five issues, Appellant
Ronald C. Gaskin complains about the mediation and arbitration process
surrounding his divorce as well as the final property division.  We affirm.

 








II. Background








This is the case of the
much-maligned Mediated Settlement Agreement (MSA).  In December of 2004, Ronald Gaskin filed for
divorce from his wife of fifteen years, Leanne Gaskin, who responded with an
answer and a counterpetition.  The trial
court ordered mediation, and it occurred on March 22, 2005, with Ronald
appearing pro se,[2]
his attorney having withdrawn prior to the mediation.  According to Ronald, A[a]fter an all[-]day discussion of terms, the parties came to an
agreement[,] and it was initially reduced to writing by the mediator and
presented to [Ronald].@  The parties filed the resulting MSA the
following day, and it is the genesis of this appeal.  It is the position of Ronald that after he
agreed to the MSA, the mediator, Mr. Ogilvie, altered it Asurreptitiously@ by
substituting a different page in the MSA from that seen by Ronald; this altered
MSA was then filed with the court. Additionally, Ronald argues that the MSA Ahad been altered in some manner@ and apparently made Ronald, and not Ronald and Leanne, responsible
for any delinquent tax liability that might arise for the period of time during
which they were married.  He testified,
however, that AI=ve always paid all my taxes.  I
owe the government nothing.  They=ve never audited me in the past 45 years.  So I have a very clean record with the IRS.@  













Specifically, Ronald asserts
that he Ared-lined@ the
original proposed MSA which read, AHusband will be solely liable for all federal income tax[es] . . . ,@ to read, AHusband and
wife will be jointly liable for all federal income tax[es] . . . ,@ and he also added A1987 Stanza@ to the list
of his separate property, and this latter change did appear in the final filed
document.  In other words, the original
Ronald-only language appeared in the filed MSA and not the Ronald-and-Leanne
change red-lined by Ronald.  Why would
Mr. Ogilvie supposedly participate in such nefarious activities?  According to Ronald, it occurred because
Leanne=s attorney, Mr. Jeter, maligned Ronald in front of the mediator.[3]  Ronald also asserts that he contacted the
mediator, who told him the problem was minor and easily corrected.  While somewhat unclear, Ronald asserts that
he read the final proposed agreement presented to him by the mediator before he
signed it and did not notice any errors.[4]  It likewise appears Athrough a glass, darkly@[5] to be the mediator=s position that he did not substitute any altered pages and that the
filed MSA was the one that Ronald Aleisurely@ read and
contained the tax language to which Ronald now objects. 

The essence of the MSA was
that Leanne would be paid immediately from Ronald=s 401(k) account, valued at $240,000, for her interest in the
homestead, plus, according to Ronald, Aother financial considerations such as alimony,A and the remaining monies in that account would be split between the
parties.  The only exception, according
to Ronald, was that he was allowed to keep in their entirety any 401(k)=s in her name that he funded. 
This went to the $15,000 portion of her equity in the marital residence.[6]  Ronald asserts that all of this originally
meant a sixty/forty split in favor of Leanne, to which he agreed, but is now a
seventy/thirty split, to which he did not agree.  Exactly how these percentages are calculated
and how the percentage changes are effectuated by the supposedly altered
language has not been explained, and despite some Sherlockian efforts by this
panel, remains undetermined.[7]













After discovering the alleged
substituted-page alteration and purportedly contacting the mediator, Ronald
filed a AWithdrawal of Assent to Mediated Settlement [Agreement].@  Pursuant to paragraph 30 of
the MSA, regarding appointment of the mediator as arbitrator of disputes
arising after the MSA was signed, the trial court then appointed the mediator
to arbitrate the dispute over the MSA, and Ronald objected to the appointment.  The arbitration went forward with Mr. Ogilvie
as arbitrator, during which Ronald=s new counsel announced that Ronald was withdrawing all allegations of
fraud against the mediator.  The result
of the arbitration was that the MSA was held to be valid.  On November 8, 2005, the court heard Leanne=s motion to enter judgment and Ronald=s motion to set aside, then granted the divorce, Aentering@ the MSA.
The trial court also denied Ronald=s motion for new trial on January 13, 2006.  The court=s findings of fact and conclusions of law stated that a MSA was
reached between the parties as a result of arm=s-length negotiations and was voluntarily entered into by them; and, inter
alia, that it fully complied with section 6.602 of the Texas Family Code;
that Ronald C. Gaskin had an opportunity to review the entire MSA; that he made
changes; that those changes were made and he subsequently signed it; that Mr.
Ogilvie did not commit any fraud, nor did Mr. Ogilvie substitute any pages in
the [MSA] after Ronald C. Gaskin signed it; and that a disproportionate
division of the estate was warranted under the enumerated facts.  This appeal followed.

III. Mediator as Arbitrator

In his first issue and in
part of his fourth issue, Ronald asserts that (1) the trial judge abused his
discretion by appointing the mediator as arbitrator in the face of objection to
him, allegations of fraud against the mediator, and without a written request
for arbitration having been made to the mediator, and (2) the trial judge
abused his discretion by allowing the mediator to exceed his authority by
acting as arbitrator.

Leanne points out that the
MSA calls for the appointment of the mediator to arbitrate any disputes that
arise concerning the MSA.[8]  Ronald cited In re Cartwright for the
proposition that it is error to appoint a mediator as arbitrator over objection
of a party.  104 S.W.3d 706 (Tex. App.CHouston [1st Dist.] 2003, orig. proceeding) (op. on reh=g).  Cartwright reads in
part:








The
mediation process encourages candid disclosures, including disclosures of
confidential information, to a mediator. 
It is the potential for the use of that confidential information that
creates the problem when the mediator, over the objection of one of the
parties, becomes the arbitrator of the same or a related dispute. Just as it
would be improper for a mediator to disclose any confidential information to
another arbitrator of the parties= dispute, it is also improper
for the mediator to act as the arbitrator in the same or a related dispute without
the express consent of the parties.

 

Id. at
714 (emphasis supplied) (footnote omitted). 
Here, however, Ronald did expressly contractually consent to the
mediator as arbitrator by executing the MSA, and then he objected based on his
allegations of fraud; but these allegations were withdrawn through his counsel
at the arbitration.  Further, at a
hearing the trial court considered the fraud allegation and found that no fraud
had occurred.  With regard to the written
request prerequisite to an arbitration, we are pointed to no place in the
record where this objection was made to the trial court.  








To preserve a complaint for our review, a party must have
presented to the trial court a timely request, objection, or motion that states
the specific grounds for the desired ruling, if they are not apparent from the
context of the request, objection, or motion. 
Tex. R. App. P. 33.1(a); see
also Tex. R. Evid.
103(a)(1).  If a party fails to do this,
error is not preserved, and the complaint is waived.  Bushell v. Dean, 803 S.W.2d 711, 712
(Tex. 1991) (op. on reh=g). 
The objecting party must get a ruling from the trial court.  Tex.
R. Evid. 103. This ruling can be either express or implied.  Frazier v. Yu, 987 S.W.2d 607, 610
(Tex. App.CFort Worth 1999, pet. denied).  

Therefore, this complaint is
waived.  Under the facts of this case, we
hold there was no error by the trial court in allowing an arbitration to go
forward as contemplated by the MSA with the mediator acting as arbitrator, and
we overrule Ronald=s first
issue and part of his fourth issue.

IV. Protective Order

In his second issue and the
remaining part of his fourth issue, Ronald asserts error on the part of the
trial court in not allowing testimony from the mediator/arbitrator at Ronald=s hearing on his motion for new trial and claims that the mediator was
not impartial in failing to reveal the alleged phone conversation with Ronald
about the purported easily-remedied tax problem.  








Ronald asserts that he
subpoenaed Mr. Ogilvie to the hearing on his motion for new trial so that he
could elicit testimony about their telephone conversation wherein Mr. Ogilvie
purportedly told him that the tax language problem was minor and could be
remedied easily.  Ronald also asserts
that the trial judge had an in camera conversation with Mr. Ogilvie and
then granted his request to quash the subpoena. 
The trial judge indicated at the hearing that pursuant to Texas Civil
Practice and Remedies Code section 154.073, he had conducted an in camera investigation
as required by the Texas Civil Practice and Remedies Code[9]
and had determined that the protective order requested by Mr. Ogilvie should be
granted.  This provision of the Texas
Civil Practice and Remedies Code distinguishes between the parties (the Aparticipants@) and the
mediator (the Athird party
facilitating the procedure@) but indicates that neither can be Arequired to testify in any proceedings relating to or arising out of@ a dispute about the mediation and cannot even be Asubject to process requiring disclosure of confidential information or
data relating to or arising out of the matter in dispute.@  Id. ' 154.073(b).  On the other hand, Aan oral communication . . . used in or made a part of [the mediation]
. . . is admissible or discoverable if it is admissible or discoverable
independent of the procedure.@  Id. ' 154.073(c).  But this refers to
the fact that communications that are discoverable or admissible at trial cannot
be made nondiscoverable or inadmissable by introducing them at a
mediation.  See Smith v. Smith,
154 F.R.D. 661, 669 (N.D. Tex. 1994). 
Hence, it appears that the trial court followed the statutory
procedure.  Further, Ronald states that








[Ronald=s]
testimony at motion for new trial showed that he had indeed called the mediator
several days after the mediation and spoke with him with respect to the
language of the MSA . . . . [Ronald] was assured in that telephonic
conversation it was easily corrected thereby giving validity to [Ronald=s]
argument as to the original agreement.

 

Therefore, Ronald=s evidence of the purported phone call was before the court.  We overrule Ronald=s second issue and remaining part of his fourth issue.

V. Division of the Marital
Estate

In his third issue, Ronald
challenges the legal and factual sufficiency of the evidence to support the
alleged seventy/thirty split of the marital property.  As previously discussed, Ronald fails to
favor this court with an explanation of how the property split reflected in the
final decree is a seventy/thirty split, how his complaints in this appeal
effectuated a change from sixty/forty to seventy/thirty, or how the trial court
abused its discretion in the final property division.  As such, this issue is inadequately
briefed and is waived.  See Tex. R. App. P. 38.1(h). 
Further, the percentages were reached through mediation, not a trial
on the merits, so a sufficiency review is inappropriate.  We overrule Ronald=s third issue.

VI. Bargained-for Exchange








In his fifth issue, Ronald
complains that the trial court abused its discretion by finding that the MSA
was a bargained-for exchange.  While we
are not directed to the source of this complaint, apparently Ronald is
referring to a statement by the trial court at a hearing on Ronald=s motion to set aside and Leanne=s motion to enter judgment that A[the trial court] believe[d] [the MSA] was a bargained-for exchange .
. . .@  Ronald relies on Boyd v.
Boyd, 67 S.W.3d 398 (Tex. App.CFort Worth 2002, no pet.), wherein the court set aside an MSA.  In that case, we held that the husband had
failed to disclose a $230,000 bonus during the mediation, which rendered the
MSA unenforceable. Id. at 404-05. 
This is clearly factually distinguishable from the facts before us.  However, the legal issues presented in Boyd
are instructive: 

Ordinarily, settlement agreements arising from
mediation are not binding where one party withdraws consent to the agreement,
unless the other party successfully sues to enforce the settlement agreement as
a contract that complies with rule 11 of the Texas Rules of Civil
Procedure.  

Unilateral withdrawal of consent does not,
however, negate the enforceability of a mediated settlement agreement in a
divorce proceeding, and a separate suit for enforcement of a contract is not
necessary.  Rather, section 6.602 creates
a procedural short cut for the enforcement of mediated settlement agreements in
divorce cases.  Thus, a mediated
settlement agreement that meets the requirements of section 6.602(b) is
binding, and a party is entitled to judgment on the agreement notwithstanding
rule 11 or another rule of law.

 

Id. at
402 (citations omitted).  The MSA on its
face meets the requirements of the family code statutory requirements, and
nothing presented in this appeal indicates that it was not entered into
voluntarily and knowingly.  Tex. Fam. Code Ann. ' 6.602 (Vernon 2006).  We
overrule Ronald=s fifth
issue.

 








VII.  Conclusion

Having overruled Ronald=s five issues, we affirm the trial court=s judgment.

 

PER CURIAM

 

PANEL F:    MCCOY, HOLMAN, and GARDNER, JJ.

 

DELIVERED:
August 31, 2006











[1]See Tex. R. App. P. 47.4.





[2]Ronald, however, enlightens the
court that he became a student of law in 1990, that he enjoyed the tutelage of
a judge in Dallas, and that he has indicated in his curriculum that he has been
a pro se litigant for over fifteen years.





[3]The record reveals the following
conversation that Ronald had with the court:

 

Mr. Gaskin: . . . The only evidence
I have in that area, your Honor, was considering Mr. Jeter=s tactics wherein he tried to
malign me in front of the court.  And
what I feel he did, he was bad-mouthing, maligning me to Mr. Ogilvie, influencing
him to fix my wagon, if you will, and so forth, and that was his motive.

 

. . . .

 

The Court: So you=re saying that Mr. Jeter there was,
in your words, maligning you in front of Mr. Ogilvie and, therefore, that
motivated Mr. Ogilvie to perpetrate a fraud.

 

Mr. Gaskin: Well, that=s all I can think of, more or less,
that there is some kind of collusion, your Honor.

 

Ronald also opines that, AWhy Mr. Ogilvie did what he did is
truly a matter of speculation on [Ronald=s] behalf.@





[4]However, Ronald testified, AOh, I skimmed it, you know, your
Honor, I mean, just kind of fast read it.@  Later, according to
Ronald, 

 

[s]ubsequently after a few days,
[he] read leisurely the final copy that was handed to him by Theodore Ogilvie,
which was entered in the record, in the same manner he had read it when
presented to him after corrections were made only to discover that the agreement
had been altered in some manner surreptiously by [the mediator].

 

In his briefing to this court, Ronald explains his
testimony concerning Askimming@ the MSA as follows:  

 

On the issue that [Ronald] skimmed lightly the document in the sense
how normal people skim could be nothing further from the truth. . . . [Ronald=s] normal reading speed is no more
than half of a normal persons reading speed because he has to read with total
comprehension.  A skim operation for
[Ronald] places his speed between 1/2 to 3/4 of normal reading speed.





[5]I Corinthians 13:12 (King
James).





[6]This remains unexplained, as does
Ronald=s position that he Atraded 23,000+ for a zero return.@





[7]As Sherlock Holmes said to Dr.
Watson, AHow often have I said to you that when
you have eliminated the impossible, whatever remains, however improbable, must
be the truth?@ 
Sir Arthur Conan Doyle, The Sign
of Four (1889).  It is not our
responsibility to eliminate the impossible and find the probable.  It is an appellant=s duty to provide references of any
evidence in the record that might support his contentions.  Grand Prairie ISD v. Southern Parks
Imports, Inc., 803 S.W.2d 762, 768 (Tex. App.CDallas), rev=d in part on other grounds, 813 S.W.2d 499 (Tex. 1991).  It is not our duty to search the record for
the appellant.  Most Worshipful Prince
Hall Grand Lodge, Free & Accepted Masons of Tex. & Jurisdiction v.
Jackson, 732 S.W.2d 407, 412 (Tex. App.CDallas 1987, writ ref=d n.r.e.).





[8]Paragraph 30 of the MSA reads in
part, AThe parties agree that they hereby
appoint Theodore Ogilvie to arbitrate any disputes which may hereafter arise
with regard to . . . [the MSA].  THE
PARTIES AGREE THAT THE MEDIATOR=S DECISION SHALL BE BINDING AND NOT SUBJECT TO APPEAL . . .
.  Either party may request arbitration
hereunder by written request to the mediator . . . .@ 





[9]Tex. Civ.
Prac. & Rem. Code Ann. ' 154.073(e) (Vernon 2005).