COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-06-039-CV

RONALD C. GASKIN APPELLANT

V.

LEANNE J. GASKIN APPELLEE

------------

FROM THE 362ND DISTRICT COURT OF DENTON COUNTY

------------

MEMORANDUM OPINION
(footnote: 1)

------------

I.  Introduction

In five issues, Appellant Ronald C. Gaskin complains about the mediation and arbitration process surrounding his divorce as well as the final property division.  We affirm.

II. Background

This is the case of the much-maligned Mediated Settlement Agreement (MSA).  In December of 2004, Ronald Gaskin filed for divorce from his wife of fifteen years, Leanne Gaskin, who responded with an answer and a counterpetition.  The trial court ordered mediation, and it occurred on March 22, 2005, with Ronald appearing 
pro se
,
(footnote: 2) his attorney having withdrawn prior to the mediation.  According to Ronald, “[a]fter an all[-]day discussion of terms, the parties came to an agreement[,] and it was initially reduced to writing by the mediator and presented to [Ronald].”  The parties filed the resulting MSA the following day, and it is the genesis of this appeal.  It is the position of Ronald that after he agreed to the MSA, the mediator, Mr. Ogilvie, altered it “surreptitiously” by substituting a different page in the MSA from that seen by Ronald; this altered MSA was then filed with the court. Additionally, Ronald argues that the MSA “had been altered in some manner” and apparently made Ronald, and not Ronald and Leanne, responsible for any delinquent tax liability that might arise for the period of time during which they were married.  He testified, however, that “I’ve always paid all my taxes.  I owe the government nothing.  They’ve never audited me in the past 45 years.  So I have a very clean record with the IRS.”  

Specifically, Ronald asserts that he “red-lined” the original proposed MSA which read, “Husband will be solely liable for all federal income tax[es] . . . ,” to read, “Husband and wife will be jointly liable for all federal income tax[es] . . . ,” and he also added “1987 Stanza” to the list of his separate property, and this latter change did appear in the final filed document.  In other words, the original Ronald-only language appeared in the filed MSA and not the Ronald-and-Leanne change red-lined by Ronald.  Why would Mr. Ogilvie supposedly participate in such nefarious activities?  According to Ronald, it occurred because Leanne’s attorney, Mr. Jeter, maligned Ronald in front of the mediator.
(footnote: 3)  Ronald also asserts that he contacted the mediator, who told him the problem was minor and easily corrected.  While somewhat unclear, Ronald asserts that he read the final proposed agreement presented to him by the mediator before he signed it and did not notice any errors.
(footnote: 4)  It likewise appears “through a glass, darkly”
(footnote: 5) to be the mediator’s position that he did not substitute any altered pages and that the filed MSA was the one that Ronald “leisurely” read and contained the tax language to which Ronald now objects. 

The essence of the MSA was that Leanne would be paid immediately from Ronald’s 401(k) account, valued at $240,000, for her interest in the homestead, plus, according to Ronald, “other financial considerations such as alimony,“ and the remaining monies in that account would be split between the parties.  The only exception, according to Ronald, was that he was allowed to keep in their entirety any 401(k)’s in her name that he funded.  This went to the $15,000 portion of her equity in the marital residence.
(footnote: 6)  Ronald asserts that all of this originally meant a sixty/forty split in favor of Leanne, to which he agreed, but is now a seventy/thirty split, to which he did not agree.  Exactly how these percentages are calculated and how the percentage changes are effectuated by the supposedly altered language has not been explained, and despite some Sherlockian efforts by this panel, remains undetermined.
(footnote: 7)
 After discovering the alleged substituted-page alteration and purportedly contacting the mediator, Ronald filed a “Withdrawal of Assent to Mediated Settlement [Agreement].”  Pursuant to paragraph 30 of the MSA, regarding appointment of the mediator as arbitrator of disputes arising after the MSA was signed, the trial court then appointed the mediator to arbitrate the dispute over the MSA, and Ronald objected to the appointment.  The arbitration went forward with Mr. Ogilvie as arbitrator, during which Ronald’s new counsel announced that Ronald was withdrawing all allegations of fraud against the mediator.  The result of the arbitration was that the MSA was held to be valid.  On November 8, 2005, the court heard Leanne’s motion to enter judgment and Ronald’s motion to set aside, then granted the divorce, “entering” the MSA. The trial court also denied Ronald’s motion for new trial on January 13, 2006.  The court’s findings of fact and conclusions of law stated that a MSA was reached between the parties as a result of arm’s-length negotiations and was voluntarily entered into by them; and, 
inter alia,
 that it fully complied with section 6.602 of the Texas Family Code; that Ronald C. Gaskin had an opportunity to review the entire MSA; that he made changes; that those changes were made and he subsequently signed it; that Mr. Ogilvie did not commit any fraud, nor did Mr. Ogilvie substitute any pages in the [MSA] after Ronald C. Gaskin signed it; and that a disproportionate division of the estate was warranted under the enumerated facts.  This appeal followed.

III. Mediator as Arbitrator

In his first issue and in part of his fourth issue, Ronald asserts that (1) the trial judge abused his discretion by appointing the mediator as arbitrator in the face of objection to him, allegations of fraud against the mediator, and without a written request for arbitration having been made to the mediator, and (2) the trial judge abused his discretion by allowing the mediator to exceed his authority by acting as arbitrator.

Leanne points out that the MSA calls for the appointment of the mediator to arbitrate any disputes that arise concerning the MSA.
(footnote: 8)  Ronald cited 
In re Cartwright
 for the proposition that it is error to appoint a mediator as arbitrator over objection of a party.  
104 S.W.3d 706 (Tex. App.—Houston [1st
 Dist.] 2003, orig. proceeding) (op. on reh’g).  
Cartwright
 reads in part:

The mediation process encourages candid disclosures, including disclosures of confidential information, to a mediator.  It is the potential for the use of that confidential information that creates the problem when the mediator, over the objection of one of the parties, becomes the arbitrator of the same or a related dispute. Just as it would be improper for a mediator to disclose any confidential information to another arbitrator of the parties’ dispute, it is also improper for the mediator to act as the arbitrator in the same or a related dispute 
without the express consent of the parties
.

Id.
 at 714 (emphasis supplied) (footnote omitted).  Here, however, Ronald did expressly contractually consent to the mediator as arbitrator by executing the MSA, and then he objected based on his allegations of fraud; but these allegations were withdrawn through his counsel at the arbitration.  Further, at a hearing the trial court considered the fraud allegation and found that no fraud had occurred.  With regard to the written request prerequisite to an arbitration, we are pointed to no place in the record where this objection was made to the trial court.  

To preserve a complaint for our review, a party must have presented to the trial court a timely request, objection, or motion that states the specific grounds for the desired ruling, if they are not apparent from the context of the request, objection, or motion.  
Tex. R. App. P.
 33.1(a); 
see also
 
Tex. R. Evid.
 103(a)(1).  If a party fails to do this, error is not preserved, and the complaint is waived.  
Bushell v. Dean
, 803 S.W.2d 711, 712 (Tex. 1991) (op. on reh’g).  The objecting party must get a ruling from the trial court.  
Tex. R. Evid.
 103. This ruling can be either express or implied.  
Frazier v. Yu,
 987 S.W.2d 607, 610 (Tex. App.—Fort Worth 1999, pet. denied).  

Therefore, this complaint is waived.  Under the facts of this case, we hold there was no error by the trial court in allowing an arbitration to go forward as contemplated by the MSA with the mediator acting as arbitrator, and we overrule Ronald’s first issue and part of his fourth issue.

IV. Protective Order

In his second issue and the remaining part of his fourth issue, Ronald asserts error on the part of the trial court in not allowing testimony from the mediator/arbitrator at Ronald’s hearing on his motion for new trial and claims that the mediator was not impartial in failing to reveal the alleged phone conversation with Ronald about the purported easily-remedied tax problem.  

Ronald asserts that he subpoenaed Mr. Ogilvie to the hearing on his motion for new trial so that he could elicit testimony about their telephone conversation wherein Mr. Ogilvie purportedly told him that the tax language problem was minor and could be remedied easily.  Ronald also asserts that the trial judge had an 
in camera
 conversation with Mr. Ogilvie and then granted his request to quash the subpoena.  The trial judge indicated at the hearing that pursuant to Texas Civil Practice and Remedies Code section 154.073, he had conducted an 
in camera 
investigation as required by the Texas Civil Practice and Remedies Code
(footnote: 9) and had determined that the protective order requested by Mr. Ogilvie should be granted.  This provision of the Texas Civil Practice and Remedies Code distinguishes between the parties (the “participants”) and the mediator (the “third party facilitating the procedure”) but indicates that neither can be “required to testify in any proceedings relating to or arising out of” a dispute about the mediation and cannot even be “subject to process requiring disclosure of confidential information or data relating to or arising out of the matter in dispute.”  
Id. § 
154.073(b).  On the other hand, “an oral communication . . . used in or made a part of [the mediation] . . . is admissible or discoverable if it is admissible or discoverable independent of the procedure.”
  
Id
. § 154.073
(c
).  
But this refers to the fact that communications that are discoverable or admissible at trial cannot be made nondiscoverable or inadmissable by introducing them at a mediation.  
See Smith v. Smith,
 154 F.R.D. 661, 669 (N.D. Tex. 1994).  Hence, it appears that the trial court followed the statutory procedure.  Further, Ronald states that

[Ronald’s] testimony at motion for new trial showed that he had indeed called the mediator several days after the mediation and spoke with him with respect to the language of the MSA . . . . [Ronald] was assured in that telephonic conversation it was easily corrected thereby giving validity to [Ronald’s] argument as to the original agreement.

Therefore, Ronald’s evidence of the purported phone call was before the court.  We overrule Ronald’s second issue and remaining part of his fourth issue.

V. Division of the Marital Estate

In his third issue, Ronald challenges the legal and factual sufficiency of the evidence to support the alleged seventy/thirty split of the marital property.  As previously discussed, Ronald fails to favor this court with an explanation of how the property split reflected in the final decree is a seventy/thirty split, how his complaints in this appeal effectuated a change from sixty/forty to seventy/thirty, or how the trial court abused its discretion in the final property division.  As such, this issue
 
is inadequately briefed and is waived.
  
See
 Tex. R. App. P.
 38.1(h)
.  
Further, the percentages were reached through mediation, not a trial on the merits, so a sufficiency review is inappropriate.  We overrule Ronald’s third issue.

VI. Bargained-for Exchange

In his fifth issue, Ronald complains that the trial court abused its discretion by finding that the MSA was a bargained-for exchange.  While we are not directed to the source of this complaint, apparently Ronald is referring to a statement by the trial court at a hearing on Ronald’s motion to set aside and Leanne’s motion to enter judgment that “[the trial court] believe[d] [the MSA] was a bargained-for exchange . . . .”  Ronald relies on 
Boyd v. Boyd
, 67 S.W.3d 398 (Tex. App.—Fort Worth 2002, no pet.), wherein the court set aside an MSA.  In that case, we held that the husband had failed to disclose a $230,000 bonus during the mediation, which rendered the MSA unenforceable. 
Id.
 at 404-05.  This is clearly factually distinguishable from the facts before us.  However, the legal issues presented in 
Boyd
 are instructive: 

Ordinarily, settlement agreements arising from mediation are not binding where one party withdraws consent to the agreement, unless the other party successfully sues to enforce the settlement agreement as a contract that complies with rule 11 of the Texas Rules of Civil Procedure.  

Unilateral withdrawal of consent does not, however, negate the enforceability of a mediated settlement agreement in a divorce proceeding, and a separate suit for enforcement of a contract is not necessary.  Rather, section 6.602 creates a procedural short cut for the enforcement of mediated settlement agreements in divorce cases.  Thus, a mediated settlement agreement that meets the requirements of section 6.602(b) is binding, and a party is entitled to judgment on the agreement notwithstanding rule 11 or another rule of law.

Id. 
at 402 (citations omitted).  The MSA on its face meets the requirements of the family code statutory requirements, and nothing presented in this appeal indicates that it was not entered into voluntarily and knowingly.
  Tex. Fam. Code Ann.
 § 6.602 (Vernon 2006).  We overrule Ronald’s fifth issue.

VII.  Conclusion

Having overruled Ronald’s five issues, we affirm the trial court’s judgment.

PER CURIAM

PANEL F: MCCOY, HOLMAN, and GARDNER, JJ.

DELIVERED: August 31, 2006

FOOTNOTES
1:
See
 
Tex. R. App. P
. 47.4.

2:
Ronald, however, enlightens the court that he became a student of law in 1990, that he enjoyed the tutelage of a judge in Dallas, and that he has indicated in his curriculum that he has been a 
pro se 
litigant for over fifteen years.

3:
The record reveals the following conversation that Ronald had with the court:

Mr. Gaskin: . . . The only evidence I have in that area, your Honor, was considering Mr. Jeter’s tactics wherein he tried to malign me in front of the court.  And what I feel he did, he was bad-mouthing, maligning me to Mr. Ogilvie, influencing him to fix my wagon, if you will, and so forth, and that was his motive.

. . . .

The Court: So you’re saying that Mr. Jeter there was, in your words, maligning you in front of Mr. Ogilvie and, therefore, that motivated Mr. Ogilvie to perpetrate a fraud.

Mr. Gaskin: Well, that’s all I can think of, more or less, that there is some kind of collusion, your Honor.

Ronald also opines that, “Why Mr. Ogilvie did what he did is truly a matter of speculation on [Ronald’s] behalf.”

4:
However, Ronald testified, “Oh, I skimmed it, you know, your Honor, I mean, just kind of fast read it.”  Later, according to Ronald, 

[s]ubsequently after a few days, [he] read leisurely the final copy that was handed to him by Theodore Ogilvie, which was entered in the record, in the same manner he had read it when presented to him after corrections were made only to discover that the agreement had been altered in some manner surreptiously by [the mediator].

In his briefing to this court, Ronald explains his testimony concerning “skimming” the MSA as follows:  

On the issue that [Ronald] skimmed lightly the document in the sense how normal people skim could be nothing further from the truth. . . . [Ronald’s] normal reading speed is no more than half of a normal persons reading speed because he has to read with total comprehension.  A skim operation for [Ronald] places his speed between 1/2 to 3/4 of normal reading speed.

5:
I 
Corinthians
 13:12 (King James).

6:
This remains unexplained, as does Ronald’s position that he “traded 23,000+ for a zero return.”

7:
As Sherlock Holmes said to Dr. Watson, “How often have I said to you that when you have eliminated the impossible, whatever remains, however improbable, must be the truth?”  
Sir Arthur Conan Doyle, The Sign of Four 
(1889).  It is not our responsibility to eliminate the impossible and find the probable.  It is an appellant’s duty to provide references of any evidence in the record that might support his contentions.  
Grand Prairie ISD v. Southern Parks Imports
,
 Inc.
, 803 S.W.2d 762, 768 (Tex. App.—Dallas), 
rev’d in part on other grounds
, 813 S.W.2d 499 (Tex. 1991).  It is not our duty to search the record for the appellant.  
Most Worshipful Prince Hall Grand Lodge, Free & Accepted Masons of Tex. & Jurisdiction v. Jackson
, 732 S.W.2d 407, 412 (Tex. App.—Dallas 1987, writ ref’d n.r.e.).

8:
Paragraph 30 of the MSA reads in part, “The parties agree that they hereby appoint Theodore Ogilvie to arbitrate any disputes which may hereafter arise with regard to . . . [the MSA].  THE PARTIES AGREE THAT THE MEDIATOR’S DECISION SHALL BE BINDING AND NOT SUBJECT TO APPEAL . . . .  Either party may request arbitration hereunder by written request to the mediator . . . .” 

9:
Tex. Civ. Prac. & Rem. Code Ann.
 § 154.073(e) (Vernon 2005).